**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Case No. ______________**

**STACEY ANN HANSEN,**

**Plaintiff,**

**v.**

**DJO, INCORPORATED,**
**f/k/a DJ ORTHOPEDICS, INC.,**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware 19801**

**AND**

**REABLE THERAPEUTICS, LLC**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware 19801**

**AND**

**I-FLOW CORPORATION**
**c/o National Registered Agents, Inc.**
**160 Greentree Drive, Suite 101**
**Dover, Delaware 19904**

**AND**

**ORATEC INTERVENTIONS, INC.**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware 19801**

**AND**

**SMITH & NEPHEW, INC.**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware 19801**

**AND**

**STEPHHEN W. HOUSEWORTH**
**c/o Sports Orthopedics & Spine**
**569 Skyline Drive**
**Jackson, Tennessee 38301**

**AND**

**ASTRAZENECA PHARMACEUTICALS LP**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware 19801**

**AND**

**ASTRAZENECA LP**
**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware 19801**

**AND**

**ZENECA HOLDINGS, INC.**
**c/o Zeneca Inc.**
**1800 Concord Pike**
**Wilmington, Delaware 19850**

**DEFENDANTS.**

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, THE PLAINTIFF, STACEY ANN HANSEN, a married woman ("Plaintiff"), by and through undersigned counsel, and for her Complaint against Defendants DJO, INCORPORATED, f/k/a DJ ORTHOPEDICS, INC.; REABLE THERAPEUTICS, LLC; I-FLOW CORPORATION; ORATEC INTERVENTIONS, INC.; SMITH & NEPHEW, INC.; STEPHEN W. HOUSEWORTH, M.D.; ASTRAZENECA PHARAMCEUTCIALS LP; ASTRAZENECA LP; and ZENECA HOLDINGS, INC. (hereinafter collectively referred to as "Defendants"), hereby states the following:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a natural citizen residing in the City of Colorado Springs, El Paso County, Colorado.

2. Defendant I-Flow Corporation ("I-Flow") is a Delaware corporation with its principal place of business in Lake Forest, California. I-Flow manufactured, promoted and distributed the unreasonably dangerous and defective pain pump that was implanted into Plaintiff's left shoulder. I-Flow conducted

regular and sustained business in Colorado by selling and distributing its products in Colorado, as described below. I-Flow is a "manufacturing defendant".

3. Defendant DJO, Incorporated (formerly known as DJ Orthopedics, Inc.) and its parent company, defendant ReAble Therapeutics, LLC (collectively referred to as the "DJO defendants") are Delaware corporations. DJO, Incorporated's principal place of business is in Vista, California. The principal place of business for ReAble Therapeutics, LLC is in Austin, Texas. The DJO defendants conducted regular and sustained business in Colorado by selling and distributing defective products in Colorado. The DJO defendants marketed, promoted, distributed and sold the defective and unreasonably dangerous I-Flow pain pump that was implanted in to Plaintiff's left shoulder. The DJO defendants are "manufacturing defendants".

4. At all relevant times, the DJ defendants and I-Flow designed, manufactured, marketed and sold in Colorado a product called a "pain pump," a medical device intended to deliver, via catheter, continuous doses of pain relief medication directly into the shoulder joint space. When used in this manner, the pain pumps are defective and unreasonably dangerous.

5. Defendant AstraZeneca Pharmaceuticals LP is a subsidiary of, and United States headquarters for AstraZeneca PLC, a global pharmaceutical corporation headquartered in London, England, United Kingdom. Through its

subsidiaries and divisions, AstraZeneca PLC researches, develops, manufactures, and markets pharmaceutical products, including Marcaine (bupivacaine) and ropivacaine, anesthetic drugs used in the pain pumps manufactured and marketed by the pain pump manufacturers identified above. AstraZeneca Pharmaceuticals LP is incorporated under the laws of the State of Delaware and is headquartered in Wilmington, Delaware. Defendant AstraZeneca LP is a subsidiary of AstraZeneca PLC and is incorporated under the laws of the State of Delaware. Its headquarters are in Wilmington, Delaware. Defendant Zeneca Holdings, Inc. is also a subsidiary of AstraZeneca PLC and is incorporated under the laws of the State of Delaware. Its headquarters are in Wilmington, Delaware. Plaintiff collectively refers to these subsidiaries as the "AstraZeneca defendants." At all relevant times, the AstraZeneca defendants conducted regular and sustained business in Colorado by selling and distributing their products in Colorado, as described below. The "AstraZeneca defendants" are "manufacturing defendants".

6. At all relevant times, the AstraZeneca defendants designed and manufactured Marcaine (bupivacaine) and ropivacaine for use in orthopedic surgery, specifically for arthroscopic surgery. The AstraZeneca defendants' anesthetic products were marketed for and commonly used in pain pump devices, including the pain pump implanted in Plaintiff's shoulder following surgery.

7. Defendant Smith & Nephew, Inc. is a division of Smith & Nephew, plc, a multi-national corporation organized under the laws of the United Kingdom. Smith & Nephew, Inc. is organized under the laws of the State of Delaware, with its principle place of business in Memphis, Tennessee. Smith & Nephew, Inc. is admitted to conduct business in the State of Colorado and is currently in good standing. At all relevant times, Smith & Nephew, Inc. conducted regular and sustained business in Colorado by selling and distributing its products in Colorado, as described below. Smith & Nephew, Inc. is a "manufacturing defendant".

8. Defendant Oratec Interventions, Inc. ("Oratec") is a subsidiary of defendant Smith & Nephew. Oratec is organized under the laws of the State of Delaware and maintains its principal place of business in Menlo Park, California. At all relevant times, Oratec conducted regular and sustained business in Colorado by selling and distributing its products in Colorado, as described below. Oratec is a "manufacturing defendant".

9. In 2002, prior to the occurrences made the basis of this lawsuit, Smith & Nephew, Inc. acquired Oratec Interventions, Inc., the manufacturer of the defective and unreasonably dangerous "Oratec angle tip TAC-S" medical device at issue herein.

10. Defendant Stephen W. Houseworth, M.D. ("Dr. Houseworth") is a physician currently licensed to practice medicine in the State of Tennessee, and a

resident of the State of Tennessee. At the time of the occurrences described herein, and at the time Dr. Houseworth provided care, surgery and treatment to Plaintiff, he was a resident of and licensed to practice medicine in the State of Colorado. Dr. Houseworth's specialty is orthopedic surgery.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 exclusive of interest and costs and because Plaintiff herein is a citizen of the State of Colorado and the Defendants herein are citizens of states other than the State of Colorado.

12. The manufacturing Defendants do substantial business in the State of Colorado, advertise in the State of Colorado, and have received substantial compensation and profits from the sale of their pain pumps, pain medication and thermal wands in the State of Colorado, and have engaged in tortious conduct in the State of Colorado. All conduct by Dr. Houseworth about which Plaintiff complains occurred or was performed by Dr. Houseworth in the state of Colorado.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Plaintiff purchased the products that form the basis of this lawsuit in the State of Colorado, resided in the District of Colorado, and Plaintiff's pain pumps were implanted and the pain medication was dispensed in the District of Colorado.

## NATURE OF THE ACTION AND GENERAL ALLEGATIONS

14. Plaintiff underwent left shoulder surgery in Colorado Springs, Colorado. Based on information and belief, the "Oratec angle tip TAC-S probe" manufactured and marketed by Oratec Interventions, Inc. and Smith & Nephew was used on Plaintiff in thermal capsulorrhaphy, to tighten the posterior, inferior glenohumeral ligament in June, 2003.

15. Also, based on information and belief, two separate catheters of a "DJ Ortho pain buster" pain pump manufactured by I-Flow Corporation and distributed by DJO, Incorporated (formerly known as DJ Orthopedics, Inc.) were implanted into Plaintiff's glenohumeral shoulder joint at the conclusion of her 2003 operation. Both of these procedures were performed in Colorado Springs, Colorado.

16. Immediately following the operation, a "DJ Ortho pain buster" pain pump (which was designed, manufactured, marketed, distributed and sold by I-Flow and the DJO defendants) was loaded with Marcaine 0.5% and ropivacaine 0.5% (which had been manufactured, marketed, distributed and sold by the AstraZeneca defendants) and it's catheter implanted directly in to Plaintiff's left (shoulder) glenohumeral joint space .

17. The continuous injection of these medications directly into the shoulder joint via the pain pump caused serious and permanent damage to the

cartilage of Plaintiff's shoulder joint. The Plaintiff, as a result, suffered narrowing of the joint space caused by a condition called "chondrolysis". Chondrolysis is the complete or nearly complete loss of cartilage in the shoulder joint. There is no known treatment or cure for the condition.

18. The Plaintiff suffered significant pain and disability as a result of the chondrolysis and was forced to undergo complete shoulder replacement surgery in order to obtain any relief from the condition.

19. Plaintiff's shoulder replacement surgery occurred when she was 28 years old. Due to her young age, it is probable that Plaintiff's left shoulder joint will need to be replaced again in the future, perhaps multiple times.

20. The injuries, damages and losses suffered by the Plaintiff and described herein were the reasonably foreseeable result of the Defendants' individual negligence and/or the result of the manufacturing defendants' design, manufacturing, marketing, and distributing unreasonably dangerous medications and medical devices.

21. None of the Defendants warned the Plaintiff or her surgeon about the unreasonable risks and dangers of using the pain pump and/or pain medication in this manner. The surgeon used the pain pump and pain medication in the manner intended and/or instructed and/or directed by the Defendants.

22. In 2003 alternative arthroscopic procedures and pain control techniques were available that were fully accepted among the orthopedic community and proven to be safe and effective by clinical experience reported in appropriate orthopedic literature.

23. The instruments designed, manufactured, marketed and sold by Oratec and Smith & Nephew, Inc. for performing thermal capsulorrhaphy were unreasonably dangerous and defective for the purpose for which they were marketed. Alternatively, if it is shown that Dr. Houseworth was given adequate instructions and warnings regarding the dangers of performing excessive thermal capsulorrhaphy with the instruments and then proceeded to perform surgery in such a reckless manner, then he was negligent and grossly negligent.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF: NEGLIGENCE - AGAINST DJO DEFENDANTS AND I-FLOW

24. Based on what they knew or reasonably should have known, the DJO Defendants and I-Flow were each negligent in one or more of the following particulars:

a. In failing to instruct or warn the U.S. medical community that the safety of the device had not been established for use in the shoulder joint space;

b. In failing to disclose to the U.S. medical community that continuous injection of commonly used anesthetics such as Marcaine or ropivacaine, with or without epinephrine, into the shoulder joint space, may cause serious and permanent injury to the joint cartilage;

c. In failing to include a contraindication against placing the catheter of the pain pump in the shoulder joint space;

d. In failing to provide to the U.S. medical community adequate instructions for the safe use of the device, specifically failing to identify anesthetic medications that could be safely and effectively used in the shoulder joint space;

e. In failing to disclose to the U.S. medical community that the effectiveness of the device with these medications was uncertain for use in the shoulder joint space;

f. Manufacturing a product designed to be injected directly into the shoulder joint that caused damage to articular cartilage;

g. Manufacturing a product designed to deliver, over time, dangerously high doses of medication directly into shoulder tissue; and

h. Promoting the pain pumps for use in the joint space after the FDA had considered and rejected such an indication.

25. The negligent acts and omissions alleged above were substantial contributing causes of the injuries suffered by the Plaintiff. Specifically, the pain pump caused the Plaintiff to suffer the permanent loss of cartilage in her left shoulder, resulting in severe pain and discomfort of the shoulder, loss of use and function of the shoulder and arm, and required shoulder replacement surgery. The use of the pain pump also rendered the therapeutic benefits of her original shoulder surgery worthless and of no value. The Plaintiff will also require future medical care, including additional shoulder surgeries as she ages, including but not limited to, additional shoulder replacement surgeries. In addition, she has suffered mental distress and anguish and she has suffered permanent impairment of the use and function of her affected upper extremities.

**SECOND CLAIM FOR RELIEF: NEGLIGENCE - AGAINST THE ASTRAZENECA DEFENDANTS**

26. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

27. Based on what they knew or reasonably should have known as described above, the AstraZeneca defendants had a duty to warn physicians of the dangers of injecting Marcaine (bupivacaine) and ropivacaine drugs in joint spaces over time, but failed to do so. The AstraZeneca defendants also had a duty to test and investigate the use of their local anesthetic drugs in the manner described

above, but failed to do so. As a result, the AstraZeneca defendants breached their duties in the following particulars:

a. In failing to test and investigate the side effects of injecting their bupivacaine drugs over time in joint spaces;

b. In failing to instruct or warn the U.S. medical community that the safety of their bupivacaine drugs had not been established for use with pain pumps in the shoulder joint space;

c. In failing to disclose to the U.S. medical community that continuous injection of commonly used anesthetics, such Marcaine and ropivacaine, into the shoulder joint space may cause serious and permanent injury to the joint cartilage;

d. In failing to instruct or otherwise include a precaution against placing the catheter of the pain pump with Marcaine or ropivacaine in the shoulder joint space;

e. In failing to provide to the U.S. medical community adequate instructions for the safe use of Marcaine and ropivacaine and to warn physicians to use only those medications that could be safely and effectively used in the shoulder joint space;

f. In failing to disclose to the U.S. medical community that the side effects of Marcaine and ropivacaine were uncertain for use with pain pumps in the shoulder joint space;

g. Manufacturing Marcaine and ropivacaine with the knowledge that these drugs were being marketed by the DJO defendants and I-Flow for use with pain pumps in the shoulder joint space, and knowing that use of these drugs in such a manner was associated with damage to articular cartilage;

h. Promoting Marcaine and ropivacaine for use with pain pumps, and specifically for use at high doses in the shoulder joint space without FDA approval for such indications; and

i. Failing to warn pain pump manufacturers and sellers not to promote the use of Marcaine and ropivacaine with pain pumps for infusion directly into the shoulder joint space.

28. The negligent acts and omissions alleged above were substantial contributing causes of the injuries suffered by the Plaintiff. Specifically, the injection of these medications via the pain pump caused the Plaintiff to suffer the permanent loss of cartilage in her left shoulder, resulting in severe pain and discomfort of the shoulder, loss of use and function of the shoulder and arm, and requiring multiple surgeries. The use of the pain pump also rendered the

therapeutic benefits of her shoulder surgery worthless and of no value. The Plaintiff will also require future medical care, including additional shoulder surgeries as she ages, including but not limited to, additional shoulder replacement surgeries. In addition, she has suffered mental distress and anguish and she has suffered permanent impairment of the use and function of her affected upper extremities.

**THIRD CLAIM FOR RELIEF: PRODUCT LIABILITY – AGAINST DEFENDANTS, DJO INCORPORATED, f/k/a DJ ORTHOPEDICS, INC., REABLE THERAPEUTICS, LLC I-FLOW CORPORATION; AGAINST DEFENDANTS, ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, AND ZENECA HOLDINGS, INC.**

29. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

30. The pain pump device and/or anesthetic medications which were designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by Defendants were placed in the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into consideration the utility of the products and the risk involved in their use.

31. Further, the pain pump device and/or anesthetic medications which were designed, developed, manufactured, packaged, labeled, marketed, promoted, advertised, sold, and/or distributed by the Defendants, were defective in marketing due to inadequate warnings or instructions.

32. Further, the pain pump device and/or anesthetic medications which were designed, developed, manufactured, packaged, labeled, marketed, advertised, sold, and/or distributed by the Defendants, were defective and unreasonably dangerous due to inadequate testing.

33. Additionally, Defendants failed to provide timely and adequate post-marketing warnings or instructions after the manufacturers knew of the risk of injury from the pain pump device and/or anesthetic medications. The defective nature of these products was a direct and proximate cause of Plaintiff's injuries as alleged above.

**FOURTH CLAIM FOR RELIEF: PRODUCT LIABILITY – AGAINST DEFENDANTS, ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, AND ZENECA HOLDINGS, INC.**

34. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

35. The medications manufactured by the AstraZeneca defendants, which were used in the pain pump devices following Plaintiff’s shoulder surgeries, were defective in design and unreasonably dangerous for the following reasons:

a. Marcaine and/or ropivacaine can kill the chondrocytes in the shoulder joint space and lead to chondrolysis, a disabling, painful and untreatable condition;

b. These medications as used in the pain pump device caused Plaintiff to develop chondrolysis;

c. The instructions and labeling for Marcaine and ropivacaine failed to disclose the risks as enumerated above.

36. Defendants had a duty to exercise reasonable care in designing, developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing their pain pump device and/or anesthetic medications.

37. The Defendants failed to exercise ordinary care in designing, testing, developing, manufacturing, packaging, labeling, marketing, promoting, advertising, selling, and/or distributing of their pain pump device and/or anesthetic medications. The Defendants knew or should have known that their anesthetic medications when used as described above created an unreasonable risk of bodily harm.

38. Despite the fact that the Defendants knew or should have known that their anesthetic medications caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the Defendants continued to market their pain pump device and/or anesthetic medications to physicians and consumers, including Plaintiff, when there were safer alternative methods of treatment.

39. The Defendants knew or should have known that consumers, such as Plaintiff, would suffer injury or death as a result of the Defendants' failure to exercise ordinary care as described above.

40. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was injured as described above.

**FIFTH CLAIM FOR RELIEF: PRODUCT LIABILITY – AGAINST DEFENDANTS, DJO INCORPORATED, f/k/a DJ ORTHOPEDICS, INC., REABLE THERAPEUTICS, LLC, I-FLOW CORPORATION, ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, AND ZENECA HOLDINGS, INC.**

41. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

42. At all relevant times, each of the Defendants knew or reasonably should have known that their pain pump and the anesthetic medications used in them were unreasonably dangerous and defective when used as directed and as designed. A reasonably careful search and review of the scientific and medical literature, and other information, should have indicated to the Defendants that:

a. Commonly used anesthetics, such as Marcaine and ropivacaine, with or without epinephrine, when used in their pain pump were harmful to human and animal articular cartilage;

b. Use of the pain pump in a joint space had not been approved by the F.D.A. and, in fact, such an indication had been specifically rejected by the F.D.A.;

c. Continuous injection of such medications through a catheter directly into the shoulder joint had not been adequately tested for safety or effectiveness;

d. The risk of chondrolysis and other serious post-operative problems associated with using the pain pump and its medications in the joint space outweighed the possible benefits of such use.

43. Before Plaintiff was first treated with the pain pump device and/or anesthetic medications and during the period which she used the anesthetic medications, Defendants expressly warranted that their pain pump device and/or anesthetic medications were safe.

44. The pain pump device and/or anesthetic medications failed to conform to these express representations of the Defendants in that they were not safe and had high levels of serious side effects, whether taken individually or in conjunction with other therapies.

45. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was injured as described above.

**SIXTH CLAIM FOR RELIEF: PRODUCT LIABILITY – AGAINST DEFNDANTS, DJO INCORPORATED, f/k/a DJ ORTHOPEDICS, INC., REABLE THERAPEUTICS, LLC, I-FLOW CORPORATION, ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, AND ZENECA HOLDINGS, INC.**

46. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

47. At the time Defendants packaged, labeled, promoted, marketed, advertised, sold, and/or distributed their pain pump device and/or anesthetic medications for use by Plaintiff, the Defendants knew of the use for which their pain pump device and/or anesthetic medications were intended and impliedly warranted their products to be of merchantable quality and safe and fit for such use.

48. Plaintiff reasonably relied upon the skill and judgment of the Defendants as to whether their pain pump device and/or anesthetic medications were of merchantable quality and safe and fit for their intended use.

49. Contrary to such implied warranty, their pain pump device and/or anesthetic medications were not of merchantable quality or safe or fit for their intended use because the pain pump device and/or anesthetic medications were unreasonably dangerous and unfit for the ordinary purposes for which they were intended.

50. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was injured as described above.

**SEVENTH CLAIM FOR RELIEF: PRODUCT LIABILITY – AGAINST DEFNDANTS, DJO INCORPORATED, f/k/a DJ ORTHOPEDICS, INC., REABLE THERAPEUTICS, LLC, I-FLOW CORPORATION, ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, AND ZENECA HOLDINGS, INC.**

51. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

52. Before Plaintiff was treated with the pain pump device and/or anesthetic medications and during the period in which she utilized the pain pump device and/or anesthetic medications, Defendants negligently, recklessly, intentionally and fraudulently made material misrepresentations that their pain pump device and/or anesthetic medications were safe. The Defendants did so with the intent to induce physicians to prescribe and for consumers, including Plaintiffs, to purchase their pain pump device and/or anesthetic medications.

53. At the time the Defendants made these representations, the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to their truth. The Defendants made these representations with the intent to mislead.

54. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was injured as described above.

**EIGHTH CLAIM FOR RELIEF: PRODUCT LIABILITY – AGAINST DEFNDANTS, DJO INCORPORATED, f/k/a DJ ORTHOPEDICS, INC., REABLE THERAPEUTICS, LLC AND I-FLOW CORPORATION**

55. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

56. Before Plaintiff was prescribed the pain pump device and/or anesthetic medications and during the period in which Plaintiff utilized the pain pump device and/or anesthetic medications, Defendants fraudulently suppressed material information regarding the safety and efficacy of their pain pump device and/or anesthetic medications and their harmful side effects in order to induce physicians to prescribe and consumers, including Plaintiff, to purchase their pain pump device and/or anesthetic medications.

57. At the time the Defendants suppressed the fact that their pain pump device and/or anesthetic medications were not safe, the Defendants were under a duty to communicate this information to Plaintiff.

58. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff was injured as described above.

**NINTH SIXTH CLAIM FOR RELIF: NEGLIGENCE – AGAINST DEFENDANT, STEPHEN W. HOUSEWORTH, M.D.**

59. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

60. Dr. Houseworth breached his duty to Plaintiff by using the unreasonably dangerous instruments sold and marketed by Oratec to perform thermal capsulorrhaphy on Plaintiff. Dr. Houseworth knew or should have known that those instruments were capable of generating excessive heat and could be associated with the development of chondrolysis. Either Dr. Houseworth was negligent in applying excessive heat over too great a period of time or; Oratec and Smith & Nephew, Inc. were negligent in failing to instruct and/or warn Dr. Houseworth about the proper and safe way to use the device in question.

61. Alternatively, Oratec and Smith & Nephew, Inc. were negligent in failing to disclose that their devices should not be used for thermal capsulorrhaphy.

62. Additionally, Dr. Houseworth was negligent in the following ways:

a. Failing to advise his patient of and offer his patient, proven and safe alternative procedures;

b. Failing to behave as would a reasonable and prudent orthopedic surgeon under the circumstances presented.

63. The above and foregoing negligent acts and omissions, together or singularly, caused Plaintiff to sustain the injuries, damages and losses described herein.

## TENTH EIGHTH CLAIM FOR RELIEF: PRODUCT LIABILITY – AGAINST DEFENDANT, SMITH & NEPHEW, INC. AND ORATEC INTERVENTIONS, INC.

64. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

65. Defendant, Smith & Nephew, Inc. and Oratec are engaged in the business of manufacturing, selling and leasing medical devices and ancillary products used with medical devices.

66. The "Oratec angle tip TAC-S probe" device at issue herein was manufactured, marketed, distributed and sold by Defendants, Smith & Nephew Inc. and Oratec.

67. The "Oratec angle tip TAC-S probe" device was defective and unreasonably dangerous for use in shoulder thermal capsulorrhaphy because it was not safe for that use in that the mono-polar device provides unpredictable and/or excessive thermal energy. By the time of the procedure at issue, it was reported in the medical literature that use of this type of device caused multiple problems including, but not limited to, chondrolysis. Defendant manufacturer, Smith & Nephew, Inc. failed to warn orthopedic surgeons, learned intermediaries, health care facilities, surgeons, hospitals and consumers generally of this risk and danger.

68. Alternatively, Plaintiff is informed and believes that the product was neither appropriate nor suited for the use to which it was put and Defendants Smith & Nephew, Inc. and Oratec specifically marketed the device for this use.

69. The product at issue was defective and unreasonably dangerous by the time it left the control of the Defendant, Smith & Nephew, Inc. and/or Oratec.

70. Plaintiff is informed and believes that the Defendant, Smith & Nephew, Inc. and/or Oratec owned the "Oratec angle tip TAC-S probe" device used by Defendant, Stephen W. Houseworth, M.D. during the arthroscopic surgery at issue.

71. The use of the Oratec angle tip TAC-S probe by Dr. Houseworth on Plaintiff was a substantial contributing factor to her development of chondrolysis and the damages alleged above.

**DAMAGES**

72. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

73. As a result of the Defendants' negligent acts and omissions and/or the defective and unreasonably dangerous products they designed, manufactured, marketed and sold, as described herein, Plaintiff, Stacey Ann Hansen, has sustained the following damages:

a. Pain and suffering in the past;

b. Pain and suffering the future;

c. Mental anguish the past;

d. Mental anguish the future;

e. Loss of enjoyment of life in the past;

f. Loss of enjoyment of life in the future;

g. Physical impairment in the past;

h. Physical impairment in the future;

i. Disability in the past;

j. Disability in the future;

k. Past medical expenses;

l. Future medical expenses that she will likely incur after reaching the age of majority;

m. Past lost earnings; and

n. Loss of earning capacity in the future.

74. In addition, the Plaintiff is entitled to interest, before and after judgment, at the highest lawful rate.

75. Further, the Plaintiff is entitled to recover costs expended herein, including deposition costs and expert witness fees.

## DISCOVERY OF CAUSE OF ACTION

76. Plaintiff neither knew nor could have known that the defendants' negligence or defective devices caused injury and harm until on or after February

21, 2006, when her physician first determined and noted his her medical records that one of the medical devices at issue may have caused or contributed to her chondrolysis.

**PRAYER**

WHEREFORE, premises considered, Plaintiff respectfully requests that the Defendants be cited to appear and answer herein and that upon trial hereof, that Plaintiff recover the damages described above, together with interest thereon before and after judgment at the highest lawful rate, along with costs expended herein, specifically including deposition costs and expert witness fees. Plaintiff also requests such other and further orders or relief, at law or in equity, to which she may show herself to be justly entitled.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury.

**(The remainder of this page was left intentionally blank.)**

Respectfully submitted on this the 21st day of February, 2008.

s/ D. Robert Jones

D. Robert Jones, #25393
D. Robert Jones, P.C.
219 West Colorado Ave, Suite 210
Colorado Springs, CO 80903
Phone: 719-630-1556
Fax: 719-630-7004
E-mail: jones@drjpc.com

**AND**

Ted G. Meadows (USDC ID No. 441066)
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: 334-269-2343
Facsimile: 334-954-7555
Email: ted.meadows@beasleyallen.com

**COUNSEL FOR PLAINTIFF**

**Plaintiff's address:**

**3745 Summer Breeze Drive**
**Colorado Springs, Colorado 80918**