# EXHIBIT 48

Case No. 1:08-cv-00365-MSK-CBS Document 202-4 filed 03/04/10 USDC Colorado pg 2 of 4

# *Annotated*
# REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, SECOND

## 2005–2006

by

Michael J. Saks
David L. Faigman
David H. Kaye
Joseph Sanders

THOMSON WEST

REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, SECOND is a publication of the Federal Judicial Center.

40297269

© 2005 Thomson/West

ISBN 0–314–95451–1

West, a Thomson business, has created this publication to provide you with accurate and authoritative information concerning the subject matter covered. However, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. West is not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

### *G. What Is the Effect of Ceasing Exposure?*

If an agent is a cause of a disease one would expect that cessation of exposure to that agent ordinarily would reduce the risk of the disease. This has been the case, for example, with cigarette smoking and lung cancer. In many situations, however, relevant data are simply not available regarding the possible effects of ending the exposure. But when such data are available and eliminating exposure reduces the incidence of disease, this factor strongly supports a causal relationship. [379]

## Authors' Comments

As we noted in the comment to section IV.A, supra, many courts refuse to permit an expert to testify about causation based solely on temporal order. However, when the expert can demonstrate through a challenge-dechallenge-rechallenge procedure that the plaintiff's condition betters and worsens when the suspected substance is removed and then reintroduced, courts generally permit the expert to testify as to causation. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999). This type of data is most useful in proving specific causation. When it is introduced to prove general causation, its reliability turns on factors such as sample size, selection of subjects, and similar considerations. As the court in *Dunn v. Sandoz Pharmaceuticals, Inc.*, 275 F. Supp.2d 672, 683 (M.D.N.C. 2003) noted:

> While dechallenge and rechallenge reports are more valuable to demonstrating causation because they measure the patient's reaction to a drug, the value of the information gained from rechallenge and dechallenge tests for purposes of establishing general causation is limited because they involve only individual patients rather than groups. Although the dechallenge and rechallenge data [in this case] are more probative of causation than case reports, the small number of dechallenge/rechallenge patients do not constitute a reliable basis to support a conclusion that Parlodel may cause stroke in postpartum women generally.

### *H. Does the Association Exhibit Specificity?*

An association exhibits specificity if the exposure is associated only with a single disease or type of disease.[125] The vast majority of agents do not cause a wide variety of effects. For example, asbestos causes mesothelioma and lung cancer and may cause one or two other cancers, but there is no evidence that it causes any other types of cancers. Thus, a study that finds that an agent is associated with many different diseases should be examined skeptically. Nevertheless, there may be causal relationships in which this guideline is not satisfied. Cigarette manufacturers have long claimed that because cigarettes have been linked to lung cancer, emphysema, bladder cancer, heart disease,

125. This criterion reflects the fact that although an agent causes one disease, it does not necessarily cause other diseases. *See, e.g.*, Nelson v. American Sterilizer Co., 566 N.W.2d 671, 676–77 (Mich. Ct. App. 1997) (affirming dismissal of plaintiff's claims that chemical exposure caused her liver disorder, but recognizing that evidence supported claims for neuropathy and other illnesses); Sanderson v. International Flavors & Fragrances, Inc., 950 F. Supp. 981, 996–98 (C.D. Cal. 1996).