IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 1:08-cv-00365-MSK-CBS

STACEY ANN HANSEN,

Plaintiff,

v.

DJO, INCORPORATED, f/k/a DJ ORTHOPEDICS, INC.; I-FLOW CORPORATION

Defendants.

---

**DEFENDANT I-FLOW'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS RULE 702 MOTION TO EXCLUDE THE PROPOSED EXPERT OPINIONS OF SUZANNE PARISIAN AND CHARLES BECK**

---

By this supplemental memorandum, Defendant I-Flow moves to exclude five opinions of Dr. Suzanne Parisian and two opinions of Dr. Charles Beck.[1]

## I. INTRODUCTION

Plaintiff offers Dr. Suzanne Parisian to testify about the role, procedures, and functions of the Food and Drug Administration ("FDA"), as well as the duties and responsibilities of I-Flow as a medical device manufacturer. (Appx. II, Tab 10, at 8-9.) Parisian is not qualified to opine on either subject, since her experience consists of a four-year stint as an FDA staff member fifteen years ago and her medical training, which is not relevant here. Exceeding the scope of her narrow expertise, Parisian misuses her medical degree and limited FDA experience to present

[1] Defendants have separately filed, and I-Flow incorporates here by reference, the Parties' Joint Motion under Fed. R. Evid. 702 (Dkt. No. 153) (the "Motion") and its accompanying memorandum (the "Memorandum"), which seek to exclude Plaintiff's expert opinions on general causation. As in the Memorandum, citations here ("Appx. __, Tab __") are to documents in the appendices. Appendix I contains reference materials, Appendix II contains the reports of Plaintiff's proffered experts, and Appendix III contains deposition and trial transcripts.

argument rather than analysis about I-Flow's conduct. Her 209-page report is fashioned as a factual narrative of I-Flow's regulatory history and marketing history, culled together from cherry-picked documents and depositions, but lacks any analysis beyond unsupported conclusions.

Parisian is a professional expert and this is her *modus operandi*. She has a history of reports and testimony with long narratives—including dozens of pages that merely recite the contents of certain documents—followed by unsupported conclusions on sundry topics that may, but more likely do not, fall within her purported area of expertise. Other courts have excluded, or at least substantially limited, this disguised advocacy. *See, e.g., Oakberg v. Zimmer, Inc.*, No. 05-35231, 2006 WL 3478318, *1 (9th Cir. Dec. 1, 2006) (affirming exclusion of Parisian's testimony on FDA regulations); *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-1928, 2010 WL 1737107, at *16-17 (S.D. Fla. Apr. 27, 2010) ("Dr. Parisian does not analyze the facts [but] regurgitates them and reaches conclusory opinions. . . . Dr. Parisian's major role in this litigation appears to be that of Plaintiffs' advocate rather than expert."); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y 2009) (noting that Parisian's report "presents a narrative of select regulatory events through . . . summary or selective quotation" and holding that Parisian "will not be permitted to merely read, selectively quote from, or 'regurgitate' the evidence"); *In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 878 (E.D. Ark. 2008) (holding on post-trial motion that "[s]ince Dr. Parisian testified as to the bottom line without any explanation, failed to provide expert analysis, testified beyond limitations established by pretrial orders, testified in areas beyond her expertise, and invaded areas that required no expert testimony, most of Dr. Parisian's punitive damages testimony should have been excluded"), *aff'd in part and rev'd in part on other grounds*, 586 F.3d 547 (8th Cir. 2009) (affirming the ruling on Parisian); *Reece v.*

*Astrazeneca Pharm., LP*, 500 F. Supp. 2d 736, 744-46 (S.D. Ohio 2007) (excluding Parisian's testimony because she "failed to demonstrate that she used scientifically valid methodology or reasoning in reaching her conclusions."). In keeping with this pattern, Parisian's opinions here exceed the scope of her expertise, exceed the scope of permissible expert testimony, and rely on a nonexistent methodology.

Plaintiff similarly offers Dr. Charles Beck, an orthopedic surgeon, to opine that I-Flow was negligent and failed to meet industry standards of care. (Appx. II, Tab 2, at 20-21.) As with Parisian's opinions on FDA law and compliance, these are improper legal conclusions on the ultimate issue of the case. And like Parisian's report, Beck's report consists of an improper narrative of biased facts, followed by summary conclusions, with no analysis to show why the conclusions follow from the facts.

## II. ARGUMENT

I-Flow seeks a ruling that bars the following opinions by Dr. Parisian:

- "I-Flow and DJO disregarded their duties and obligations to protect public safety and ensure compliance with regulatory safeguards of the Food Drug and Cosmetic Act ("the Act")." Motion at 6 (Opinion 1).

- "I-Flow and DJO failed to adhere to the requirements of the Act when they promoted elective continuous post-operative perfusion of intra-articular spaces to physicians by providing false and misleading information with inadequate warnings about its use in combination with FDA-approved drugs." Motion at 6 (Opinion 2).

- "I-Flow and DJO disregarded information in medical and scientific literature regarding negative effects of anesthetics on cartilage when they began to promote post-operative continuous infusion of anesthetic into cartilaginous joints." Motion at 7 (Opinion 3).

- "I-Flow and DJO engaged in practices designed to mislead the FDA, physicians and their own sales representatives to profit from sales of adulterated and misbranded pain pumps when used for infusion of local anesthetics into joints." Motion at 7 (Opinion 4).

- "I-Flow and DJO failed to adequately notify physicians in a timely manner of the risks associated with intra-articular infusion of local anesthetics and that their pain pumps were not designed, tested or cleared by the FDA for that new indication."[2] Motion at 8 (Opinion 5).

I-Flow also seeks an order barring the following opinions by Dr. Beck:

- "Manufacturers, distributors, and sellers of pain pumps were negligent, and failed to meet the applicable standard of reasonable care and safety consciousness and said negligence was a substantial contributing factor in the cause of chondrolysis." Motion at 3 (Opinion 2).

- "The standard of care of a reasonable, careful, and competent, and safety-conscious medical device manufacturer, distributor or seller required that they inform orthopedic surgeons that the FDA had rejected use of pain pumps directly into the joint space." Motion at 4 (Opinion 3).

### A. Drs. Parisian and Beck Are Not Qualified.

Under Rule 702, an expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education" with regard to the proposed testimony. Fed. R. Evid. 702. As the Court has noted, an expert's qualifications are considered "relative to the particular opinion or testimony proffered." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008). Qualification is informed by "whether the witness proposes to testify about matters growing naturally and directly out of research he or she conducted independent of the litigation" and "whether the witness developed opinions expressly for purposes of testifying." *Id.*

#### 1. Dr. Parisian Is Not Qualified to Opine on FDA Regulations or Practices.

Parisian is a medical doctor and pathologist by education, training, and experience, but she has not practiced medicine in more than 20 years. Her self-proclaimed area of expertise is

---

2 Plaintiff designated for trial only five of the eleven opinions in Parisian's report. Motion at 6-8. The remaining six opinions suffer from the same infirmities, however. For example, Opinion Nine of Parisian's expert report states that defendants "continue to minimize and downplay the risks of chondrolysis associated with continuous intra-articular infusion to health care providers, employees, distributors and sales representatives." (Appx. II, Tab 10, at 14.) Parisian is not qualified to offer this opinion, which is unreliable and unsupported anyway. Defendants submit that these additional opinions, though not included in the Motion because Plaintiff has now chosen to abandon them, should also be excluded under Rule 702 in the event that Plaintiff attempts to resurrect them.

the FDA regulatory scheme and FDA procedures for clearance and approval of medical devices. *See, e.g., In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 668 (D. N.J. 2008). This "expertise" supposedly arises from her four-year tenure as a medical officer at the FDA some fifteen years ago. *Id.* Since 1995, when she left her position with the FDA's Center for Devices and Radiological Health, Parisian has worked as a private consultant and testifying expert in products liability litigation. (Appx. II, Tab 10 [Parisian Report] at App. 1, p. 1.) Parisian currently spends more than 90% of her professional time serving as a hired expert, almost entirely on behalf of plaintiffs. (Appx. III, Tab 14, at 102:15-104:4.) She has not published anything since 2001. (Appx. II, Tab 10, at App. 1, pp. 13-14.) She has not engaged in research independent of litigation. (*Id.* at 1-16.) Her opinions in this case do not derive from any research or experience outside of litigation, a factor that the Court has found telling in assessing an expert's qualification. *See Crabbe*, 556 F. Supp. 2d at 1221.

A current employee of the FDA is not qualified to speak knowledgeably about the agency's operating procedures, or profuse and complicated regulatory scheme, just because she works there. The deficit is compounded when the employee in question is not even current, but rather someone who left fifteen years ago. Parisian holds herself out as an expert in the field without justifying these deficits or explaining what she has done in the meantime to stay current. As another federal court held, Parisian is no more than "an advocate, presented with the trappings of an expert[.]" *In re Trasylol*, 2010 WL 1737107 at *20.

**2. Dr. Parisian Is Not Qualified to Opine on Continuous-Infusion Devices.**

Even if Parisian were sufficiently qualified to render opinions about the FDA or the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*. (2006), her opinions would exceed the scope of her alleged expertise. For example, Parisian opines that I-Flow

"disregarded information in medical and scientific literature regarding negative effects of anesthetics on cartilage" and failed to notify physicians of the "risks associated with intra-articular infusion[.]" Motion at 7-8. But there is nothing in her background to suggest that she knows anything about the intra-articular infusion of local anesthetics, including either its supposed risks or its place in current medical and scientific literature.[3]

Parisian may be a skilled physician, but "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (citing *Alexander v. Smith & Nephew*, 98 F. Supp. 2d 1310, 1315 (N.D. Okla. 2000) ("The simple possession of a medical degree is insufficient to qualify a physician to testify as to the advantage of a spinal fixation device, the medical causation of spine-related ailments, or the mechanical functioning of an orthopedic implantation device.")). Parisian is board-certified in pathology, a specialty on the outer stratum of relevance to this case. She possesses no specialized education, training, or experience in orthopedics, anesthesiology, or surgery. (Appx. III, Tab 13, at 131:12-132:4, 323:9-21; Tab 14, at 18:4-17, 20:8-18, 49:12-24.) She has never performed or participated in an arthroscopic shoulder surgery. (Appx. III, Tab 14, at 18:8-17, 49:12-24.)

Parisian is also not an epidemiologist or statistician. In fact, Parisian testified that in order to complete her reviews while at the FDA, she needed to consult with FDA staff members who *were* trained in epidemiology. *See* Appx. II, Tab 10, at 4 ¶ 6 ("Working with an FDA epidemiologist . . ."); Appx. III, Tab 15 at 584:9-17 (explaining that Office of Surveillance and Biometrics has "all the epidemiologists and the statisticians"). Yet throughout her report, she opines on the significance of various studies and relies on them for conclusions about I-Flow's

---

[3] If Plaintiff has offered Parisian to interpret the medical literature on infusion devices, then her opinion should be excluded as cumulative anyway. Plaintiff has already designated an overly long list of experts on that subject.

behavior. *See, e.g.*, Appx. II, Tab 10, at 140-151, ¶¶ 259-279 (detailing several clinical studies on infusion devices, which supposedly demonstrate risks that manufacturers should have conveyed to sales representatives). Parisian is not qualified to opine about the implications of scientific studies and the alleged risks those studies show, and the Court should exclude her testimony on those matters. *See, e.g., In re Prempro*, 554 F. Supp. 2d at 884 (holding on post-trial motion that Parisian's testimony should have been excluded because she was not qualified to interpret an article that was "epidemiologically based and relates to causation; both are outside the scope of Dr. Parisian's qualifications").

As suggested by the cases rejecting her opinions, Parisian will keep trying on claims of expertise until she finds one that fits. But expertise is not a coat, and her unfortunate pattern of conduct needs to end. She approaches, if not personifies, the junk scientist that Rule 702 was designed to eliminate. Her opinions should be excluded.

**3. Drs. Parisian and Beck Are Not Qualified to Opine on the Adequacy of Warnings.**

The practice of medicine does not make one an expert in warnings or warning labels. Plaintiff has nevertheless offered Parisian and Beck to testify about whether Defendants gave (and patients and surgeons received) adequate warnings. Those opinions should be excluded.

In *Ralston*, the plaintiff sued the manufacturer of a medical nail used to keep multiple bone fragments together, alleging that the manufacturer failed to warn about the risks of the device. *Ralston*, 275 F.3d at 967-68. A board-certified orthopedic surgeon was designated to opine that the warnings accompanying the medical device were insufficient. *Id.* at 969. The district court excluded the testimony. *Id.* Affirming, the Tenth Circuit explained that the proffered expert could not "rely upon general orthopaedic and surgical principles and concepts" to opine on the sufficiency of "warnings." *Id.* at 970-71. *See also Lemmermann v. Blue Cross*

*Blue Shield of Wis.*, No. 08-CV-0779, 2010 WL 2016848, at *5-7 (E.D. Wis. May 18, 2010) (allowing experienced chemical engineer to opine on general causation but not on warnings, and noting that his "background shows next to no signs of expertise in consumer protection or product liability issues, nor does it establish an expertise in a manufacturer's responsibilities to the end users of their products.")[4]

The same reasoning applies here. There is no evidence that either Parisian or Beck has "knowledge, skill, experience, training, or education" on the subject of warnings. Indeed, Parisian's effort to testify about warnings has been rejected before. The plaintiff in *Reece* designated Parisian to "offer the opinions that the defendants failed to provide physicians with adequate warnings and directions for the use of Crestor [a cholesterol-lowering drug]," and that the "defendants should have advised physicians regarding the risks of delay for detection of rhabdomyolysis and renal failure in patients with chronic muscle pain." *Reece*, 500 F. Supp. 2d at 745. The district court excluded Parisian's testimony: "Dr. Parisian is not qualified to offer such opinions because although she is a medical doctor, plaintiff has not demonstrated that there is anything in Dr. Parisian's background or training that qualifies her to testify as an expert on chronic pain patients, rhabdomyolysis, or renal failure." *Id.* at 745. Following the same logic, Parisian and Beck should not be permitted to opine on warnings here.

---

4 *See generally McCullock v. H.B. Fuller Co.*, 981 F.2d 656, 657 (2d Cir. 1992) (affirming exclusion of expert opinion relating to "[t]he adequacy of the warning labels" because expert's "training as an electrical and industrial engineer, along with his experience in the safety field, might qualify him to testify as to the need for a ventilation system" but "he lacks training or experience in . . . the design of warning labels"); *Worthington v. Wal-Mart Stores, Inc.*, 257 F. Supp. 2d 1339, 1344 (D. Kan. 2003) (excluding proffered opinion of expert who holds a Ph.D. in Industrial Engineering regarding the need for a warning label because "[h]e lacks experience in the field of fabrics, garments, or shirt labels . . . [and] has offered no factual basis, analytical framework, or reasoning process for the conclusions he has reached"); *Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1062, 1088-90 (D. Kan. 2002) (excluding opinion of physician relating to adequacy of warning on certain medications even though the physician frequently prescribed those medications).

**B. Dr. Parisian's Opinions Are Unreliable.**

Rule 702 requires a party to show (i) that the method or principle used by the witness is reliable; (ii) that the witness used sufficient facts and data as required by the method or principle; and (iii) that the witness properly applied the method or principle to the collected data. *Crabbe,* 556 F. Supp. 2d at 1221-25. Parisian's proposed testimony does not meet these standards.

An analysis of Parisian's methodology cannot go far because she does not actually employ a methodology. As in other cases, Parisian's report in this case begins with a list of several opinions; then, in sections titled "Bases for Opinions," the report lays out the Defendants' regulatory history and internal documents without any connection to the opinion it purports to explain. For example, Opinion One in Parisian's report states that I-Flow "disregarded [its] duties and obligations to protect public safety and ensure compliance with regulatory safeguards of the Food Drug and Cosmetic Act. . . ." (Appx. II, Tab 10, at 13.) The corresponding basis for the opinion, however, contains nothing more than a historical overview of the FDA's regulatory scheme for oversight of medical devices. (*Id.* at 14-51, ¶¶ 23-78.) The section liberally quotes FDA regulations and guidance documents, but does not even attempt to apply those regulations to the facts here. The word "I-Flow" (or the name of any other defendant) *does not appear a single time* in the section implicating I-Flow for purported "disregard" of its duties. (*Id.*) There is no explanation as to which duties and obligations I-Flow allegedly violated, or how I-Flow supposedly fell short.

As another example, Opinion Four asserts that Defendants sold "adulterated and misbranded pain pumps . . ." Motion at 7. However, Parisian's report references supposed "misbranding" on the part of I-Flow only once, in a conclusory, syntactically incoherent paragraph that cites a single marketing practice that has nothing to do with labeling, branding or

advertising. (Appx. II, Tab 10, at 99 ¶ 180.) This "conclusion" follows several pages that simply describe the communications between I-Flow and the FDA. (*Id.* at 82-98, ¶¶ 138-179.)

Every other opinion challenged by this motion suffers from the same fatal flaw, i.e., the lack of a coherent (or even apparent) methodology. Parisian's report has narrative and it has conclusions, but it has no analysis to connect the two. Like the offer of testimony beyond her expertise, this is not unprecedented. *See, e.g., In re Trasylol*, 2010 WL 1737107 at *17 n.32 (referring to Parisian's chronology of facts, and stating, "[w]hile it may be that the key opinions are based upon these facts, Parisian's report and testimony lack a very important link: the connection between the facts and the key opinions, in other words, the expert analysis.") The Supreme Court has held that an expert's testimony may be barred if there is "too great an analytical gap between the data and the opinion proferred." *General Electric Co. v. Joyner*, 522 U.S. 136, 146 (1997) (citation omitted). The gap here may be more accurately described as a chasm.

Several of Parisian's opinions are also unreliable because they rest on speculation and conjecture rather than facts and data. For example, Parisian opines that I-Flow "engaged in practices designed to mislead the FDA, physicians and their own sales representatives to profit from sales of adulterated and misbranded pain pumps[.]" Motion at 7.[5] But testimony about I-Flow's knowledge or intentions is speculative, and her report lacks any foundation to suggest otherwise. Once again, Parisian's conduct has precedent. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, 2007 WL 1964337, *8 (D. Minn. June 29, 2007) ("Dr. Parisian is not allowed to testify as to Guidant's knowledge. There is no foundation

---

5 Parisian's Opinion Three (that I-Flow disregarded information in medical and science literature) is also speculative, as are several informal statements in her report. *See, e.g.*, Appx. II, Tab 10, at 154 ¶ 288 ("as a direct result of his lack of actions, the complaint failed to be entered into I-Flow's complaint database. Because the event was not entered into the database, no investigation was conducted and no one considered whether the filing of a timely MDR pursuant to 21 CFR 803 was required.")

for such opinion testimony on what Guidant knowingly did or did not do. Further, such testimony from Parisian does not meet the requisites of Rule 702 and the evidentiary threshold required by [*Daubert*] and [*Kumho Tire*], because such testimony is not based upon sufficient facts or data."); *In re Fosamax*, 645 F. Supp. 2d at 192 (precluding Parisian from testifying as to the motivation, intent, state of mind, or purposes of the defendant, and noting that "Dr. Parisian conceded at the hearing that her regulatory expertise does not give her the ability to read minds.").

**C. Dr. Parisian's Opinions Are Not Appropriate Expert Testimony.**

**1. "Fraud on the FDA" Evidence is Inadmissible.**

Dr. Parisian opines that I-Flow violated the FDCA by engaging in practices "designed to mislead the FDA." Motion at 7. The opinion is barred under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). In *Buckman*, the plaintiffs filed a state-law tort claim against a bone-screw manufacturer's consultant. *Id.* at 343. They claimed that the consultant misled the FDA; that the FDA relied on the misrepresentations in approving the screws for use; and that the plaintiffs were injured as a result. *Id.* The Supreme Court rejected the claim, holding that it was preempted by the FDCA as amended by the Medical Device Amendments of 1976, 90 Stat. 539, 21 U.S.C. § 301 (1994 ed. and Supp. V). *Id.* at 350-51.

Following *Buckman*, courts have barred evidence of "fraud on the FDA" as inadmissible, even (or especially) in a state-law tort action against a private manufacturer. *See, e.g., Bouchard v. Amer. Home Prods.*, 213 F. Supp. 2d 802, 812 (N.D. Ohio 2002) (holding that evidence in a state-law claim "will be excluded outright when it is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA"); *In re Bextra & Clebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. 05-1699, 2006 WL 237472, at *10 (N.D. Cal.

Aug. 16, 2006) ("a claim premised on a drug manufacturer's failure to provide data to the FDA is preempted"). Parisian's opinion falls squarely within this basis for exclusion and should be barred.

**2. Dr. Parisian's Factual Narrative Does Not Assist the Trier of Fact.**

In order for expert testimony to be admitted, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Parisian's testimony does not meet this standard. Her report mainly recounts the interaction between Defendants and the FDA; occasionally it refers to federal regulations, but it never applies the regulations to the facts of the case. The report also regurgitates internal I-Flow documents that she finds helpful to Plaintiff's case, though she offers no percipient testimony and fails to analyze the documents. The remainder of her report recaps the medical and scientific literature on chondrolysis and related topics. Parisian does not interpret or analyze these studies and documents; she merely quotes and summarizes them. *See*, *e.g.*, Appx. II, Tab 10, at ¶¶ 296-300 (offering lengthy quotes from a number of internal emails, without comment). In essence, Parisian's report merely recounts Plaintiff's theory of the case through a biased view of the facts. But those facts should be presented to the jury directly so that it may draw its own conclusions. An expert is not necessary for that purpose, especially where the imprimatur of a medical degree could lend undue significance to selectively presented facts.

This is still another facet of Parisian's "expertise" rejected by other courts. In *Trasylol*, the court held that Parisian "does not analyze the facts; she, in the words of the *Prempro* court, regurgitates them and reaches conclusory opinions that are purportedly based on these facts. These facts should be presented to the jury directly; Dr. Parisian assumes the role of Plaintiffs' advocate in her presentation of facts and invades the province of the jury." *In re Trasylol*, 2010

WL 1737107 at *16. Similarly, in *Prempro*¸ the MDL court held after trial that Parisian's testimony should have been excluded in part because she did not provide analysis or expertise, but merely "read the contents of exhibits." *In re Prempro*, 586 F.3d at 571.

An expert does not serve as a puppet who mouths the words of the puppeteer. *Daubert* precludes the "engagement of 'expert' witnesses whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 538 (S.D.N.Y 2004). A jury is "equally capable of constructing" the facts of the case through "percipient witnesses and documentary evidence." *Id*. at 551. Advocacy presented as expert testimony should be excluded, and no exception should be made for Parisian.

**3. Dr. Parisian Offers Legal Conclusions.**

Parisian is not an attorney, but she explicitly concludes that I-Flow violated the FDCA and common-law duties. Motion at 6 (Opinions 1 and 2); *see also* Appx. II, Tab 10, at 13, Opinion No. 4 (I-Flow "promoted orthopedic surgical pumps to physicians for investigational use in patients without first obtaining an approved [Investigational Device Exemption ("IDE")] or [Investigational New Drug ("IND")]. Such negligent action . . . ignored the safeguards developed by Congress.") (internal citations omitted).

It is well-settled that experts may not offer legal conclusions. Otherwise the expert usurps the role of both the Court and the jury. *See, e.g., Myers v. Mid-West Natl. Life Ins. Co.*, No. 04-cv-00396-LTB-KLM, 2008 WL 4002429, *2 (D. Colo. Aug. 25, 2008) ("When the purpose of [expert] testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed.") (quoting *Specht v. Jensen*,

853 F.2d 805, 810 (10th Cir. 1988); *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993) (expert testimony is excluded when it "states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law.") (citation omitted).

Parisian's report opines repeatedly on the legality of I-Flow's actions. For example, she concludes that I-Flow violated the FDCA, related regulations, or otherwise acted unlawfully by (1) failing to adequately design, test, and obtain appropriate premarketing clearance from FDA; (2) misbranding the infusion devices; (3) promoting the devices for investigational use in patients before obtaining an IDE; (4) failing to warn providers, sales representatives, distributors, and patients about the risks of continuous infusion; and (5) failing to monitor complaints, performance results, and medical literature. (Appx. II, Tab 10, at 14-15.)

Courts have stricken similar testimony—including that of Dr. Parisian—about a manufacturer's duties. In *Rezulin*, for example, the district court excluded expert opinions on the duties of pharmaceutical companies because they "embrace ultimate questions of law outside the province of an expert." 309 F. Supp. 2d at 557; *see also Guidant*, 2007 WL 1964337, at *7 (barring Parisian from rendering an opinion as to whether the FDA "approved" a particular use of a device or whether the defendant "violated" its duties as a manufacturer); *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988) (jury is as qualified as expert to determine if defendant breached its duty); *Myers*, 2008 WL 4002429, at *2 (excluding expert testimony regarding an insurance company's obligations under a policy).

**D. Dr. Beck Offers Legal Conclusions and Opinions That Do Not Assist the Trier of Fact.**

Dr. Beck opines that I-Flow was negligent and failed to meet certain standards of care. As an initial matter, Beck's "standard of care" opinions are improper legal conclusions on

ultimate issues in the case. As with Parisian's similar opinions, they should be barred on that ground alone.

They would not assist the trier of fact in any case. Like Parisian's report, Beck's report meanders through a heavily canted factual history and then concludes, without connective analysis, that Defendants were negligent and "failed to meet the applicable standard of reasonable care and safety consciousness, in each of the respects alleged in the Complaint." (Appx. II, Tab 2, at 16-21. In Beck's view, Defendants failed to research and test their devices adequately; wrongfully promoted intra-articular use; failed to inform surgeons that the FDA rejected the use of pain pumps in joint spaces; failed to label their product so as to warn against intra-articular use; and failed to notify surgeons once labeling changes were made. (Appx. II, Tab 2, at 16-21.) But despite the copious opinions, Beck fails to cite any actual FDA regulations or other laws. Nor is he qualified, merely by virtue of being an orthopedic surgeon, to opine on the common-law standard of care or to provide anything beyond speculation as to the adequacy of pain-pump research and testing, the way in which Defendants promoted pain pumps, or anything relating to surgeons as a class. *See generally* Part II.A.3 above (citing *Ralston*, *Lemmerman*, and other decisions holding that the mere possession of a medical degree does not qualify one to opine on any subject related to medicine).

It should go without saying that he also omits his "methodology" for ascertaining the standard of care, as well as any facts or data supporting his opinion about the Defendants' alleged failures. His specific reference to Plaintiff's complaint only confirms that his opinion was designed to track Plaintiff's legal arguments. Beck's opinions are "no more than arguments and conclusory statements about questions of fact masquerading behind a veneer of technical language." *In re Rezulin*, 309 F. Supp. 2d at 554 (citation omitted). They should be excluded.

## III. CONCLUSION

The *Trasylol* court concluded that Dr. Parisian is "an advocate, presented with the trappings of an expert but with no expectation or intention of abiding by the opinion constraints of Rule 702." *In re Trasylol*, 2010 WL 1737107 at *20. As she has done many times before, Parisian merely channels the ventriloquism of Plaintiff's advocates without engaging in any actual expert analysis. Dr. Beck appears to have taken a page from Parisian's book, and likewise propounds a biased narrative followed by bald legal conclusions that parrot Plaintiff's theory of the case. The "expert" opinions of both Parisian and Beck are not proper, reliable, or helpful to the trier of fact, and they should be excluded.

Dated: July 7, 2010

**Attorneys for Defendant I-Flow Corporation**

*s/ Jordan Lipp*
Jeffrey R. Pilkington
Jordan Lipp
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Facsimile: (303) 893-1379
E-Mail: jeff.pilkington@dgslaw.com
jordan.lipp@dgslaw.com

Chad J. Layton
Erin N. Graham
SEGAL MCCAMBRIDGE SINGER & MAHONEY, LTD.
233 South Wacker Drive, Suite 5500
Chicago, IL 60606-6306
Telephone: (312) 645-7800
Facsimile: (312) 645-7711
E-Mail: clayton@smsm.com
egraham@smsm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2010, I electronically filed the foregoing **DEFENDANT I-FLOW'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS RULE 702 MOTION TO EXCLUDE THE PROPOSED EXPERT OPINIONS OF SUZANNE PARISIAN AND CHARLES BECK** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Attorneys for Plaintiff**

D. Robert Jones, Esq.
jones@drjpc.com

Laura B. Kalur, Esq.
lbkalur@kalurlaw.com

Ted Gordon Meadows, Esq.
Frank Woodson, Esq.
ted.meadows@beasleyallen.com
frank.woodson@beasleyallen.com

Leslie W. O'Leary, Esq.
Thomas B. Powers, Esq.
Michael L. Williams, Esq.
loleary@wdolaw.com
tpowers@wdolaw.com
mwilliams@wdolaw.com

and I hereby certify that I mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non participant's name:

NONE

*s/ Paige Finnell*