c. It continues to be a challenge for our reps to spend larger portions of their time out of ortho procedures. I take responsibility by not driving focus here from marketing and we are working on ways to improve this. I Flow has purposely taken their 275 reps and attacked our weakness outside of ortho.

d. Product line- In competitive situations, our current product line with pp 1.5 does not line up well against I-Flow, which makes conversion difficult at times. Our volume limits in pp 1/1.5 is 275ml. I Flow has pumps up to 550ml for larger incisions for plastics, general, barratries, and some cardio. Our only option is PP2 in these situations (400ml: which is many times at a different price point than I-Flow, and is not a perfect fit for all facilities).

2) Solutions

a.[BLANK-REDACTED????]

b.Education-I need to do a better job educating our reps on procedures outside of orthopedics. We have tried this in the past with little follow through in the field. But we must continue to push this opportunity

c.[ Redacted????]

400. Kevin Thornal sent an October 10, 2006 email to Dylan Crotty subject Chondrolysis, Importance : High.

This is going to hurt our pp numbers badly since a large number comes from shoulders, 2 studies and a bunch of presentations as large meeting are speaking badly on the subject. I am driving rod, zufall etc to help but we don't know the answers so until we do, some dr's are choosing not to use them…

401. The reply from Dylan Crotty to K. Thornal:

Hmmm. Are most Docs buying into it?(STR 2261).

### vii. STRYKER'S TIMELINE OF CHONDROLYSIS AND ANIMAL STUDY PROPOSAL

402. Dr. Zufall emailed a timeline of chondrolysis and rationale for conducting an animal study to John Saunders on November 28, 2006:

**First Awareness:**

Complaint by Dr. Charles Beck on 8/9/05. 9 of 13 shoulder patients with post-surgical complications. 2 or 9 responded to conservative therapy, 1 of 9 required micro-fracture surgery and 6 of 9 required shoulder replacement. 7 MRDs were filed.

**Recent Literature**

Implicating the intra-articular use of bupivacaine and bupivacaine with epinephrine

1. 2 Peer-reviewed articles in Arthroscopy: The Journal of Arthroscopic and Related Surgery (July and August 2006)

   *In-vitro* study using bovine chondrocytes

   *In-vitro* study using a rabbit shoulder model

2. Abridged version of the rabbit study in *European Cells and Materials*

3. Beck Presentation of retrospective clinical data at the AAOS 2006 Annual meeting

4. Medscape Article

**Business Impact**

1. Earnings

   Three lawsuits are currently pending: potential impact on future cases based on perceived failure to warn

   Questions from accounts regarding the potential for chondrolysis as a consequence of intra-articular PainPump use. Despite lack of direct evidence, several customers have stopped using Pain Pump for site-specific applications.

2. Regulatory Risk

   FDA requested additional information on the 7 MDRs filed. 9/20/05 (asked for CPM) and 9/22/05 (asked for investigation information used to determine if our product was at fault)

   4 MDRs filed by competitors (3 from I-Flow. 1 from McKinley filed for DonJoy kit that cited several incidents.)

**Recommended Study**

*In-vivo* rabbit shoulder model. Similar to Gomoll study, but designed using more clinically relevant experimental parameters.

Estimated Cost:~ $400,000 ~($120,000 up front)

Potential outcomes:

1. No correlation between infusion of bupivacaine and chondrolysis

   Continue to market PainPump for site specific applications

   Provide sales reps with article to address physician concerns as encountered

2. Correlation between intra-articular infusion of bupivacaine and chondrolysis but no correlation between extra-articular infusion of bupivacaine and chondrolysis.

   Continue to market Pain Pump for site specific applications

   Add warning to literature to discourage intra-articular use of Pain Pump with bupivacaine (or derivatives)

   Train sales force

   Provide sales reps with article to address physician concerns as encountered

   Correlation between intra-articular and extra-articular infusion of bupivacaine and chondrolysis (**We believe this outcome is highly unlikely**)

3. Continue to market PainPump for site specific applications

   Add warning to literature to discourage intra-articular use of Pain Pump with bupivacaine (or derivatives)

   Train sales force

   Determine follow-up study to evaluate contrast between this result and positive clinical data from other studies.(STR 2116-8; Zufall Exhibit 156).

403. On November 30, 2006 the DaVINCI proposal was sent around Stryker. The title of the proposed study by DaVINCI Biomedical Research Products was Intra-Articular Bupivacaine Infusion Study In Rabbits NON-GLP N=108(STR 1906-1913; Zufall Exhibit158).

404. On December 1, 2006 John Saunders emailed Scott Zufall regarding the DaVinci proposal for Stryker:

> …Here is my concern. Based upon what I have heard from Rod in our meeting with Curt it sounds like the experiment was designed to disprove Dr. Beck's study. As Curt pointed out this will only get us in to an argument with Dr. Beck supporters about whose study is right.

> What should be the real hypothesis that we are trying to prove or disprove? Is it to determine if intra-articular placement is safe or has any potential harm? Is it to determine if there are certain conditions when a catheter is placed intraarticularly that it may result in a potentially harmful condition? Is it something else?(STR 2112; Zufall Exhibit159)

### viii. STRYKER MODIFIED ITS PUMP LABEL IN MAY 2008

405. According to Ms. Hoffman, Stryker modified its PainPump labels, for models 1.0, 1.5, and 2, in March through May of 2008. The goal was to make the labels clearer (J Hoffman, 6/27/08, p. 41 L. 11). Stryker determined that it did not need FDA approval to make changes to its labels (J. Hoffman 6/27/08 p. 45, L1-20) Revision T for the Stryker PainPump2 Infusion Pump is dated May 2008 (GRO249640Stryker Exhibit 264). The revised labeling appears written for attorneys more than for health care providers. Stryker still has not added a Contraindication against intra-articular use and no Warning that no local anesthetic has been approved for continuous infusion in a joint. The sixth point of six points is the only mention of chondrolysis and it is discussed in a noncommittal way as to whether the use of the pump for intra-articular infusion is associated with chondrolysis. Furthermore, Stryker admits that it has done "no independent assessment" to determine if its pain pumps are associated with chondrolysis when used for intra-articular use.

406. Stryker added the new section in 2008 placing it next to the contraindication section under the heading "Special Reminder to Users" is a new section of information about a product:

> The product has been carefully designed and manufacturer to ensure its safe and effective use when used as indicated and when the instructions and cautions provided herewith are thoroughly followed. However, it should be noted that:

1. Stryker has not tested any particular medications (s)/solutions(s) in animals nor in humans and has not made any determination about the propriety or safety of any particular medication(s)/solution(s) which may be infused via the system. Accordingly, Stryker makes no recommendations or representation regarding the propriety or safety of any medication(s)/solution(s) which may be infused via the system.

2. The selection of the particular medication(s)/solution(s) to be used with any patient and the determination that such medication(s)/solution(s) is appropriate and safe for any patient are medical decision to be made solely by the physician.

3. In selecting the medication(s)/solution(s) to be used with the patient, the physician should be familiar with the potential risks and effect of each medication/solution to be used and/or combined in general and, in particular, when infused continuously via the system.

4. The selection and determination of the particular dose, flow-rate, concentration or duration of infusion for any medication(s)/solution(s) to be used via the system are medical decisions to be made solely by the physician.

5. The determination for catheter placement and other such critical decision for a given patient are to be made solely by the physician.

6. Certain clinical reports in the medical literature suggest a potential association between intra-articular continuous infusion of local anesthetic (with and without epinephrine) and the subsequent development of chondrolysis in shoulder joints. Stryker has made no independent assessment as to the validity thereof and is neither adopting nor disputing the accuracy and validity of these reports which are referenced here fin for consideration by the physician(GRO24967).

Within the Section USER/PATIENT SAFETY on in the second page of Warnings appears

DO NOT place the catheter in the synovial cavity or intra-articular space. Failure to comply may result in patient injury.

407. The PainPump2 brochure downloaded on May 11, 2009 from www.stryker.com contains no warnings or contraindication regarding intra-articular use. The brochure has photos of types of surgeries appropriate for the Pain Pump 2 and the pictures include: rotator cuff repair, ACL repair, and total knee replacement. There is no mention of risk of chondrolysis with intra-articular use or that local anesthetics are not approved for intra-articular infusion. The website

also has no Stryker Dear Health Care Professional Letter regarding the reporting of Chondrolysis and the changes in Stryker's labeling. A search of the website with the search word chondrolysis brings up no information.

## 5. PACIFIC MEDICAL

408. Pacific Medical (Pac Med) is a distributor of DonJoy Orthopedic products. It was founded by John Petlansky, who has no medical training, but has a degree in economics. He first learned about the pain pumps from DonJoy in 1999 with the launch of DonJoy's PainBuster from I-Flow.

409. Prior to his deposition had never heard that FDA had rejected clearing the pain pumps for use in the joint space (J. Petlansky,1/7/09 p 21, L.12) He also stated that since 1999, he had always understood the pain pumps were intended for intra-articular use (J. Petlansky 1/7/09 p. 21 l. 2-8). Pacific Medical ("Pac Med") had learned it was okay to use the pain pump in the joint from many avenues including the manufacturer, training, DFU, product managers, I-Flow and DJO.(J. Petlansky 1/7/09, p. 23 l. 16-20). At no time did Pac Med attempt to inform customers that intra-articular use may not be safe (J. Petlansky 1/7/09 p. 25 L. 7)

410. Pac Med looked to DonJoy to provide all training materials, launch packets and sales materials for the use of the Pac Med sales force.

411. Somewhere in March 2008, Pac Med received a phone call or letter about a lawsuit for a pain pump. He was not sure the source but it was the first time Pac Med was aware of any issue with pain pumps. Pac Med became concerned since it had been in business for 20 years and would not want anyone to receive a product from Pac Med that would hurt them. As a

result, Pac med's General Counsel, Matt Werner contacted DJO about the lawsuit. Shortly after Pac Med received notification of another lawsuit.

412. Pac Med had sold a few thousand pain pumps and had never had a complaint. They saw in the legal papers that the cases involved the shoulder.( (J Petlansky 1/7/09 p. 25 l. 18-21).

413. Pac Med looked at the DonJoy pain pump's label. They found a sticker with new warnings on some of the current inventory shortly after the middle of March. As a result, Pac Med had a conference call with its sales force on April 6 to share the changes in the directions and to inform surgeons of the changes in the directions. (J Petlansky 1/7/09 p.26, l. 5-19).

414. Pac Med never received written communications about the label changes for the McKinley pain pumps. (Petlansky 1/7/09 p. 27 L. 16)

415. Pac Med's sales manager did not learn that the FDA had rejected the intra-articular indication for pain pumps until the day before his deposition (D. Gamroth 2/27/09 p. 40, L. 4-24).

416. Pac Med understood that it would be inappropriate to promote products for unapproved uses (D. Gamroth 2/27/09 p. 40, L. 12-21)). Nevertheless, Pac Med sales force was trained on the use of pain pumps in the joint space and informed doctors about the ability to use the pain pumps in joints. (Gamroth 2/27/09 p 50-1, L 20-17 ).

## VII. BREECH OF STANDARD OF CARE FOR THE MEDICAL DEVICE INDUSTRY

417. The medical device industry and distributors have standards of conduct for selling safe and effective products in the United States. The FDA, at the mandate of Congress, is to provide oversight of a minimal standard of conduct by industry to help ensure that new medical devices introduced in the United States fulfill certain requirements for safety and effectiveness. The FDA is to also be involved in postmarketing actions to help ensure the safety of the public from FDA-regulated products and labeling. All manufacturers are able to exceed the FDA's requirements.

418. Many manufactures are now international, selling products outside the United States. For these, there are different government and regulatory requirements for medical devices. In the United States, regulatory requirements are the FDA's Food Drug and Cosmetic Act and implementing regulations. Internationally there is the ICH with global harmonization task force including the requirements of the European Commission, the Therapeutic Goods Association (TGA) of Australia, the Medicines and Healthcare Products Regulatory Agency (MHRA) of the United Kingdom (MHRA), Health Canada, Ministry of Health, Labor and Welfare (MHW) of Japan, etc. All these organizations have standards and requirements for marketing of medical devices and protection of the public

418. Beyond government standard and requirements of conduct for the medical device industry, there are the policies and procedures and codes of their own professional trade organizations. In the United States the professional trade association for medical device industry is called AdvaMed, (previously HIMA). In Europe it is Eucomed. For electrical devices in the United States, the United Sates professional trade organization is National Electrical

Manufacturers Association (NEMA). These trade organizations provide the industry and their members with standards of conduct in terms of testing, designing, manufacturing and marketing medical devices to health care professionals.

420. There are voluntary industry standards organization such a International Organization for Standardization (ISO), American National Standards Institute (ANSI) , Association for the Advancement of Medical Instrumentation (AAMI), and American Society for Testing and Materials (ASTM) to name a few. These organizations are both international and American. They develop industry standards to address adequacy of design, testing, monitoring, materials and labeling of medical devices.

421. Each United States medical device manufacturer/ distributor with product sold in the United States is required to register and list its establishment and products. Each firm is required as good manufacturing practices and pursuant to 21 CFR 820 to establish and implement its own internal written standard operating procedures, policies and guidelines. The purpose for all the standards, requirements and procedures is to ensure that the products sold to the public or to health care providers for use with patients are safe and effective and adequately labeled. Written standards and policies are meaningless if a company fails to adhere to the required standards and procedures and standards of conduct to ensure the safety and effectiveness of the product it sells.

422. All companies involved with external infusion pumps used for intraarticular infusion of local anesthetics, had deviated from the standard of care. Each has been involved in the introducing, distribution or sale of adulterated ( 21 USC 351) and/or misbranded (21 USC

352) medical device in the United States which is prohibited by the Act pursuant to 21 USC 331.

423. APPENDIX 3, titled " Summary of Failure to Warn" provides examples of when these firms have deviated from the standard of care of responsible United States medical device manufacturers.

424. I reserve the right to amend my opinions pending further discovery.

Suzanne Parisian, MD

May 27, 2009

352) medical device in the United States which is prohibited by the Act pursuant to 21 USC 331.

423. APPENDIX 3, titled " Summary of Failure to Warn" provides examples of when these firms have deviated from the standard of care of responsible United States medical device manufacturers.

424. I reserve the right to amend my opinions pending further discovery.

Suzanne Parisian, MD

May 27, 2009

# APPENDIX 2
# LEGAL TESTIMONY HISTORY

## Suzanne Parisian, M.D.

## COURT TESTIMONY
## 2004- May 22, 2009

**2/26, 23/09** Law Offices of Jeffrey B. Wihtol
D. Grossnickel, et al. vs. Stryker Corporation, et al.
Multnomah County Circuit
Court Case No. 0703-0284
Portland, OR

**1/29-30/09** Wilentz, Goldman & Spitzer
Kimberly Zundel & Charles Zundel, Stephanie Zundel vs. Johnson & Johnson; McNeil Consumer Healthcare
Middlesex County Docket No. MID-L-6854-05
Superior Court of New Jersey, NJ

**12/01/08** Walkup, Melodia, Kelly, Wecht & Schonenberger
Lisa Ann Seeno vs. Mentor Corporation and Does One through 100, inclusive
Case No.: RG06264787
County of Alameda
Superior Court of California, CA

**08/19-20/08** Mayfield & Ogle, P.A.
Wesley Webster vs. Body Dynamics, Inc., The Pantry Inc., Nittany Pharmaceuticals, Inc.
Circuit Court of the Eight Judicial Circuit, Case No: 01-01-CA-137, Division J
Alachua County, FL

**07/21-24/08** Littlepage & Booth
A. Woods vs. Pfizer, Upjohn, Pharmacia
Clark County District Court of Nevada
Eight Judicial District
Las Vegas, NV

**2/15/2008** Luvera Law Firm
P. Singh & H. Kaur vs. Edwards Lifesciences Corporation, et.al.
No: 05-2-12213-5
County of Snohomish
Superior Court State of Washington, WA

**2/12-13/08** Brent Coon & Associates
Donna Scoggins vs. Wyeth, Pfizer
United States District Court Eastern District of Arkansas
Western Division, Little Rock, AR

**4/26/07** Beasley Allen, Crow, Methvin, Portis & Miles, P.C.
Carolyn Reece vs. AstraZeneca Pharmaceuticals, LP; AstraZeneca LP
Case No. C-1-05-322
U S District Court Southern District of Ohio
Western Division, OH

**4/18-19/07** Brent Coon & Associates
Merle Simon vs. Wyeth, Pfizer
Case No: 040604229
Court of Common Pleas
Philadelphia, PA

**2/28/07** Goldenberg & Johnson, PLLC
Becky Masters vs. Eniva Corporation
Fourth Judicial District Personal Injury
District Court, Court No. 27-CV-06-6071
County of Hennepin, State of Minnesota
Minneapolis, MN

**6/7-9/06** Locks Law Firm, LLC
E. Doherty and D. Doherty vs. Merck & Co, Inc
Docket No.: ATL-L-0638-05-MT
VIOXX Litigation
Case Code No. 619
Superior Court of New Jersey Law Division: Atlantic, City
Atlantic City, NJ

**3/20/06** Walkup, Melodia, Kelly, Wecht & Schoenberger
V. Buonocore, Estate of C. Buonocore vs. Cardeon Corporation, et al.
CIV 438695
Superior Court of State of California
County of San Mateo, CA

**03/16/06** Phillip K Fife Law Office
Martha Stewart vs. Sulzer, LTD
No. BC 262780
Superior Court State of California For the County of Los Angeles
Los Angeles, CA

**01/20-24/05** Rheingold, Valet, Rheingold, Shkolnik
Marlus Hardy vs. Bayer Corporation
Second Judicial District Court
Civil No. 010902836 PL
Weber County, State of UT

## DEPOSITION TESTIMONY
## 2004- May 22, 2009

**5/21/09** Motley Rice, LLC
Denise Poole v. Matrixx Initiatives, Inc.
Case No. CV 2006-016722
Superior Court of the State of Arizona
County of Maricopa
Phoenix, AZ

**5/15/09** Searcy, Denney, Scarola, Barnhart & Shipley
D. Kilpatrick v. Breg, Inc.
Case No. 08-10052-CIV-Moore/Simonton
United States District Court
Southern District FL

**4/16-17/09** Aredia & Zometa Products Liability Litigation MDL No. 1760
No. 3:06-MD-1760
United States District Court for
The Middle District of Tennessee
Nashville, TN

**03/26/09** Bubalo, Hiestand & Rotman
C. Vance v. Rite Aid of West Virginia, et al.
Civil Action No. 06-C-351-P
Circuit Court of Logan County, WV

**03/12/09** Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.
United States District Court Southern District of New York
In RE: FOSAMAX Products Liability Litigation
No. 1:06-md-01789-JFK-JCF

**2/19/09** Harrell & Nowak, L.L.C.
Betty Mason Slicho, et al vs. Boston Scientific Corporation
24th Judicial District Court
No. 607-594, Division "C"
Parish of Jefferson, State of LA

**5/04/09**
**2/16/09** Childers & Schlueter, LLP
Patricia Ingram, parent of deceased minor Rakesh Dorsey vs. Mylan Pharmaceuticals, Inc, et al
Civil Action No. 1:08-CV-0574
In the United States District Court
Northern District of Georgia, Atlanta Division, GA

**2/5-5/09** Curry & Tolliver
J. Higginbotham et. al. vs. J. King, DO, et. al.
Civil Action No. 04-C-470
Circuit Court of Putnam County, WV

**1/10/09** Kershaw, Cutter & Ratinoff, LLP
Panacryl Sutures Products Liability Litigation
Civil Action N. 5:08-MD-01959
United States District Court
Western Division
Eastern District of North Carolina, NC

**02/09/09**
**12/18/08** May Oberfell Lorber; O'Koon & Hintermeister PLLC
Jodi McGookin, As Mother of the deceased Samantha McGookin, et al. vs. Guidant Corporation, et al.
No. 71D07-0608-CT-00192
State of Indiana, County of St. Joseph
St. Joseph Superior Court, IN

**10/16/08** Walkup, Melodia, Kelly, Wecht & Schonenberger
Lisa Ann Seeno vs. Mentor Corporation and Does One through 100, inclusive
Case No.: RG06264787
County of Alameda
Superior Court of California, CA

**10/10/08** Wilentz, Goldman & Spitzer
Kimberly Zundel & Charles Zundel, Stephanie Zundel vs. Johnson & Johnson; McNeil Consumer Healthcare
Middlesex County Docket No. MID-L-6854-05
Superior Court of New Jersey, NJ

**09/16/08** Laszlo & Associates, LLC
Jack Kelley, et al. vs. Unico Holdings Company, Inc.
Case No. C:1-07-8
Western Division in the United States District Court
Southern District of Ohio, OH

**09/09/08** Tracey Law Firm
Radford Steele & Lisa Collins, and as Next Friend of Chase Steel, a Minor Child vs. GlaxoSmithKline, PLC et al.
Cause No. 37373
23rd Judicial District
District Court of Brazoria County, TX

**07/31/08** Mayfield & Ogle, P.A.
Wesley Webster vs. Body Dynamics, Inc., The Pantry Inc., Nittany Pharmaceuticals, Inc.
Circuit Court of the Eight Judicial Circuit, Case No: 01-01-CA-137, Division J
Alachua County, FL

**09/22/08**
**06/30/08** Filan & Associates, LLC
Dan Oliva vs. Bristol-Myers Squibb and Company
UWY CV 05 4009606
Superior Court
Judicial District of Waterbury
Waterbury, CT

**06/03/08** Williams, Kastner & Gibbs, PLLC
William Dussault as Guardian Ad Litem for S.P, a minor, Eugene and Clarissa Patnode vs. Children's Hospital& Regional Medical Center, Shelhigh,Inc.
No. 05-2-36911-6 SEA
King County
Superior Court of the State of Washington
Seattle, WA

**04/21/08** Feldman, Shepherd, Wohlgelernter, Tanner & Weinstock
Lorraine Dubzak and Gerald Dubzak vs. Boston Scientific Corporation
No: 04- CV-6083
United States District Court
Eastern District of Pennsylvania, PA

**03/17/08** Bextra Marketing Sales Practices and Product Liability Litigation
Beverly Haslam vs. Pfizer, Inc.
MDL M:05-cv-01699
United States District Court
Northern District of California, CA

**03/04/08** Ortho Evra Products Liability Litigation
N.D. Ohio Case No. 1:06cv-4000
MDL Docket No. 1742
US District Court
Western Division
For the Northern District of Ohio, OH

**02/28/08** Searcy, Denney, Scarola, Barnhardt & Shipley,PA
Carolyn Runner-Bradden vs. Bausch & Lomb, Inc.
Case No. 50 2007 CA6046XXXXMB AG
Circuit Court 15th Judicial Circuit
Palm Beach County, FL

**02/01/08** Hollis, Wright & Harrington, PC
Mellisa Rix vs. Gilberto Sanchez, M.D., Abbott Laboratories, Inc.
Case No: CV 05-1219
Circuit Court
Montgomery, AL

**11/8/2007** Luvera Law Firm
P. Singh & H. Kaur vs. Edwards Lifesciences Corporation, et.al.
No: 05-2-12213-5
County of Snohomish
Superior Court State of Washington, WA

**10/15/07** Schlichter, Bogard & Denton
Binth Lewis, Guardian of Ashley Lewis, and Binth T.Lewis, representative of the estate of Ashley Lewis vs. Ortho-McNeil Pharmaceutical, et al.
Case No. 052-11741
Circuit Court of the City of St. Louis
St. Louis, MO

**10/02/07** Foley & Mansfield PLLP
Eva Hays & Ram Hays vs. C.B. Fleet Holding Company, Inc., etc.
Case No. 1-05-CV-048258
Superior Court of the State of California
County of Santa Clara, CA

**8/20/07** Human Tissue Products Liability Litigation
Civil Action No. 2:06-135 (WJM); MDL No.1763
United States District Court
District of New Jersey, NJ

**12/20/07**
**11/14/07**
**07/20/07** Prempro Products Liability Litigation
MDL. Docket No. 4:03CV1507 WRW
Pending in Eastern District of Arkansas
Western Division, Little Rock, AR

**07/10/07** The Mack Law Firm
Dawn Pryor vs. Bon-Secours-St. Joseph Health Resources, Tyco International, United States Surgical, Surgical Dynamics, Inc. et al.
Case No.: 02-2229-CA
Circuit Court of the Twentieth Judicial Circuit
Charlotte County, FL

**06/14/2007** Lynch Daskal Emery, LLP
Fleet® Phospho-soda® Litigation
New York Consolidated Cases
New York, NY

**02/20/07** Motley Rice, LLC
Mayda Nix surviving mother of Christopher Nix v GlaxoSmithKline PLC
No. CV 06-0043-PHX-EHC
United States District Court District of Arizona
Phoenix, AZ

**02/09/07** Becnel Law Firm, LLC
Sandra Jacob, Kirt Jacob, Sr. vs. Caesars Entertainment, Inc.
Civil Action No. 05-0805 Section "L"
United States District Court
Eastern District of Louisiana, LA

**12/18/06** The Stone Law Firm, PLC
Nancy Matareese vs. Tom Reese and Ruth Reese
Case No. CV 2002-003954
Superior Court State of Arizona
County of Maricopa
Phoenix, AZ

**10/11/06** Guidant Corp Implantable Defibrillators
Products Liability Litigation MDL N. 05-1708
U.S. District Court
Third Division, MN

**9/21/06** Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
Carolyn Reece vs. AstraZeneca Pharmaceuticals, L.P.
Case Number 1:05-CV-00322
U.S. District Court Southern District of Ohio
Western Division, OH

| | |
|---|---|
| **8/18/06** | The McNair Law Firm<br>Monica Weston vs. Kim's Dollar Store and CIBA Vision, a Division of Novartis Company<br>Civil Action No. 05-CP-40-0655<br>In the Common Court State of South Carolina<br>Pleas County of Richland<br>Columbia, SC |
| **7/28/06** | The Kim Law Firm<br>Charles McCullough vs. Aventis Pasteur Inc.<br>C.A. No. A-04-CV-525-LY<br>United States District Court<br>Western District of Texas<br>Austin Division, TX |
| **7/21/06** | Kershaw, Cutter, Ratinoff & York<br>Barbara Black vs. Ethicon, Inc (dba Gynecare Worldwide), Johnson & Johnson, Lifecore Biomedical Inc., Vital Pharma, Inc.<br>Civil Division<br>Circuit Court of the 15th Judicial Circuit in and for<br>Palm Beach County, FL |
| **5/8-9/06** | Locks Law Firm<br>E and D. Doherty vs. Merck & Co, Inc.<br>Vioxx Litigation<br>Superior Court of New Jersey Law<br>Division- Atlantic County<br>Docket No. ATL-L-0638-05-MT, Case No. 619<br>Atlantic City, NJ |
| **12/20/07**<br>**11/14/07**<br>**07/19/07**<br>**04/19/06** | <br><br><br>Janet, Jenner & Suggs, LLC<br>Prempro Products Litigation<br>In the Court of Common Pleas Philadelphia County<br>In Re: Hormone Therapy Case MDL Docket No. 4:03CV1507 WRW<br>In the United States District Court for Eastern District of Arkansas<br>Western District, Little Rock, AR |

**3/27/06** Carter Morey, Esq
Edna R. Judd vs. TMC Healthcare dba Tucson Medical Center
No. C20043079
In and For the County of Pima
Superior Court of the State of Arizona
Tucson, AZ

**01/16/06** Wallace & Graham, P.A.
John and Jane Doe2, Individually and as Guardians ad litem of Minor Child Doe 2
vs. Ortho-Clinical Diagnostics, Inc.
United States District Court, Middle District of North Carolina
Case No. 1:03CV00669
Charlotte, NC

**1/04/06** Philip K Fife Law Office
Martha Stewart vs. Sulzer, LTD
No. BC 262780
Superior Court State of California For the County of Los Angeles
Los Angeles, CA

**12/16/05**
**11/10/05** Kershaw, Cutter, Ratinoff & York
Renee Contratto vs. Ethicon, Inc(dba Gynecare Worldwide), Johnson & Johnson, Lifecore Biomedical Inc., Vital Pharma, Inc.
Case No. C-03-3804 ARB
United States District Court
Northern District of California
Sacramento, CA

**11/09/05** Walkup, Melodia, Kelly, Wecht & Schoenberger
V. Buonocore, Estate of C. Buonocore vs. Catholic Healthcare West, Sequoia Hospital, Cardeon Corporation, et al.
CIV 438695
Superior Court of State of California
County of San Mateo, CA

**9/08/05** Motley Rice, LLC
Estate of Estle Dutschke vs. Hoveround Corporation
Case No. 3:03-CV-00704-MO
US District Court Western District of Kentucky
Louisville, KY

| | |
|---|---|
| **7/15/05** | Law Office of R. Michael Shickich<br>Brian Renovitch vs. Teton County Hospital District, Synthes, Inc.<br>Civil No. 04-CV-188-J<br>For the District of Wyoming<br>Jackson, WY |
| **4/4/06**<br>**7/11/05** | <br>Fowler, White, Boggs, & Banker, P.A.<br>Grother, Bender , Williams vs. M. Meriwether; Doctor's Hospital of Sarasota; Clarus Medical Systems, Inc. and Surgical Innovations and Service Company<br>Case No. 98-6451-CA-01<br>Circuit Court of the Twelfth Judicial Circuit in and For Sarasota County, FL<br>Sarasota, FL |
| **12/01/05**<br>**06/10/05** | <br>Meyer & Williams, LPC<br>Brenda & Paul Saban vs. Idaho Urgent Care, Lumenis Inc., Coherent Inc.<br>District Court of the Seventh Judicial District State of Idaho<br>Case No. CV-03-1340<br>County of Bonneville, ID |
| **05/13/05** | John S. Simmons, L.L.C.<br>Moses Ashford, Sr. for Mary Bell Ashford (deceased) vs. Brian Center of Central Columbia, Inc. and Mariner Post-Acute Network<br>Civil Action No. 00-CP-40-4682<br>County of Richland, SC |
| **05/24/05**<br>**05/03/05** | <br>Edwards. Frickle, Anner-Hughes & Cook<br>P. Vinion and C. Riddle vs. Amgen Inc. and Immunex Inc.<br>United States District Court for District of Montana<br>C V 03-202-M-DWM<br>Missoula Division, MT |
| **02/02/05** | Robins, Kaplan, Miller & Ciresi LLP<br>John Doschadis vs. Zimmer, Inc.<br>United States District Court for the District of Minnesota<br>Case No. 03-CV-6439<br>Minneapolis, MN |

**03/15/05**
**03/14/05**
**12/06/04**
**12/07/04** Sutter Law Firm
Carlos Johnson, et al. vs. Ethicon, Inc., Johnson & Johnson Health Care Systems
Consumer Litigation
Charlestown, WV

**11/11/04** Tobin Koster Oleckna Reitman Greenstein Konray, PC
Roger Allan vs. Terens, et al.
Docket No. M 10-L-3030-01
Middlesex County, NJ

**10/27/04** Rheingold, Valet, Rheingold, Shkolnik
Marlus Hardy vs. Bayer Corporation
Second Judicial District Court Civil No. 010902836
Weber County, UT

**9/21/04** Phillip K. Fife Law Office
Juliet Cueva vs. FKA Sulzer Orthopedics, Ltd., et al.
Superior Court of the State of California Case No: 01CC07945
County of Orange, CA

**9/10/04** Edmond Vines Gorham Waldrep PC
Mary K Paulin vs. Aventis Pasteur Inc., et al.
Bibb County Circuit Court Case N. CV-2002-190
Birmingham, AL

**8/24/04** The Velez Law Firm
Kirsten Ross vs. Cyberonics, Inc.
Case No. SCV 14716
Superior Court of State of California
In and For the County of Placer
Sacramento, CA

**5/26/04** Robins, Kaplan, Miller & Ciresi LLP
Robert G. Oakberg, Ph.D. vs. Zimmer, Inc.
United States District Court for District Court of Montana
Cause No. CV-03-47-BU-SHE
Butte Division, MT

**5/26/04** Robins, Kaplan, Miller & Ciresi LLP
Allen Lillebo, Evelyn Reiling, vs. Zimmer, Inc.
United States District Court for District Court of Minnesota
Case No. 03-2919, Case No. 03-2920.
Minneapolis, MN

**2/25/04** William C. Greene, Attorney at Law
F. George vs. Aultman Hospital, Cardiovascular Consultants, Inc., et al.
New Philadelphia, OH

# APPENDIX 3

Summary of Failure to Warn

- In failing to instruct or warn the U.S. medical community that the safety of the device had not been established for use in the shoulder joint space;
- In failing to disclose to the U.S. medical community that continuous injection of commonly used anesthetics, such as lidocaine or marcaine with or without epinephrine, in volumes of 250 cc's or more, over two days or more, into the shoulder joint space, may cause serious and permanent injury to the joint cartilage;
- In failing to include a precaution against placing the catheter of the pain pump directly in the shoulder joint space;
- In failing to provide to the U.S. medical community adequate instructions for the safe use of the device, specifically failing to identify quantities, flow rates, and types of anesthetic medications that could be safely and effectively used in the shoulder joint space;
- In failing to disclose to the U.S. medical community that the effectiveness of the device was uncertain for use directly in the shoulder joint space;
- In failing to disclose to the U.S. medical community that the FDA had considered requests to add use of the pain pump in a joint space as an indication for use in pain pump labels, but would not clear the addition of this use of pain pumps;
- Promoting and marketing the pain pump for use in the joint space after the FDA had considered and rejected such an indication for use;
- In failing to test the pain pumps to establish that they could safely be used within the shoulder joint space; and
- In failing to disclose to the U.S. medical community that testing to establish safety of using the pumps in a joint space had not been done.