# Appendix III, Tab 2

**Deposition of Stephen F. Badylak, July 27, 2009**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
- - -

| | |
|---|---|
| DONNELL COX; ANITA McGINNESS and GERALD McGINNESS, husband and wife; DAVID DOOLITTLE and CAROLYN DOOLITTLE, husband and wife; JUAN A. HUERTA; and KATHERINE FORREST, Plaintiffs, v. DJO, LLC, et al., Defendants. | ) Case No. CV07-1310AA |
| CALEB HUGGINS, Plaintiff, v. STRYKER CORPORATION, et al., Defendants. | ) Case No. CV07-1671AA |
| ELIZABETH D. CRONIN, Plaintiff, v. I-FLOW, CORPORATION, a Delaware, Corporation, Defendant. | ) Case No. 6:09-cv-146-AA |
| | ) CONTINUED... |

STEPHEN F. BADYLAK, D.V.M., M.D., Ph.D.
VOLUME II
- - -
July 27, 2009
(7:10 a.m. - 12:04 p.m.)

Continued deposition held on the above date at McGowan Institute for Regenerative Medicine, 100 Technology Drive, Pittsburgh, Pennsylvania, before Constance E. Perks, CRR, CLR, CCP, a Notary Public and Certified Court Reporter, License No. 30XI01429.

- - -

GOLKOW TECHNOLOGIES, INC.
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

(CONTINUED...)

IVY LEE Y. NATIVIDAD and STEVE )
NATIVIDAD, )
Plaintiffs, ) Case No.
v. ) 6:09-cv-378-AA
)
STRYKER CORPORATION, et al., )
Defendants. )
_______________________________)
ERIC J. SCHOENBORN and SUZANNE G. )
SCHOENBORN, )
Plaintiffs, ) Case No.
v. ) 6:08-cv-1419-AA
)
STRYKER CORPORATION, et al., )
Defendants. )
_______________________________)
JOHN ERIC BUTLER, )
Plaintiff, ) Case No.
v. ) 6:08-cv-588-AA
)
STRYKER CORPORATION, et al., )
Defendants. )
_______________________________)
TAMARA L. FOLKMAN, )
Plaintiff, ) Case No.
v. ) 6:09-cv-342-KI
)
DJO, LLC, et al., )
Defendants. )
_______________________________)
DANNY E. ARVIDSON, et al., )
Plaintiff, ) Case No.
v. ) 08-CV-478-AA
)
DJO, LLC, et al., )
Defendants. )
_______________________________)



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION
- - -
PAUL W. WESTBROOK, )
Plaintiff, ) Case No.
v. ) 5:08cv263CLS
DJO, LLC; MCKINLEY MEDICAL, LLC; )
MOOG INC.; ASTRAZENECA PLC; )
ASTRAZENECA PHARMACEUTICALS LP; )
ASTRAZENECA LP; and ZENECA HOLDINGS, )
INC., )
Defendants. )
_______________________________)

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
- - -
TROY L. ALDERFER, )
Plaintiff, ) Civil Action No.
v. )1:08-cv-01297-MSK-MEH
)
BREG, INC., et al., )
Defendants. )
_______________________)
STACEY ANN HANSEN, )
Plaintiff, ) Civil Action No.
v. )1:08-cv-00365-MSK-CBS
)
DJO, INCORPORATED, et al., )
Defendants. )
_______________________)
SAMANTHA ARCHULETA and )
ROSEMARIE CARROLL, as parent )
and next friend, )
Plaintiffs, ) Civil Action No.
v. )1:08-cv-00962-MSK-CBS
DJO, INCORPORATED, et al., )
Defendants. )
_______________________)



A P P E A R A N C E S:

KALUR LAW OFFICE
BY: LAURA B. KALUR, ESQUIRE
lbkalur@kalurlaw.com
9755 SW Barnes Road, Suite 450
Portland, Oregon 97225
503.595.4145
Counsel for Plaintiffs Ivy Natividad, Eric Schoenborn, Eric Butler, Caleb Huggins, Paul Westbrook, Troy Alderfer

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
BY: KATHLEEN E. KELLY, ESQUIRE
kathleen.kelly@wilsonelser.com
260 Franklin Street, 14th Floor
Boston, Massachusetts 02110-3112
617.422.5300
Counsel for Defendant I-Flow

ULMER BERNE, LLP
BY: PAUL J. COSGROVE, ESQUIRE
pcosgrove@ulmer.com
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409
513.698.5000
Counsel for Defendant DJO, LLC

SEDGWICK DETERT MORAN & ARNOLD, LLP
BY: WAYNE A. WOLFF, ESQUIRE
wayne.wolff@sdma.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105-1101
415.781.7900
Counsel for Defendant Stryker Corporation



APPEARANCES, CONTINUED:

HARRIS BEACH, PLLC
BY: JUDI ABBOTT CURRY, ESQUIRE
jcurry@harrisbeach.com
100 Wall Street, 23rd Floor
New York, New York 10005
212.687.0100
Counsel for Defendants McKinley Medical, Curlin Medical, and Moog

APPEARING VIA TELECONFERENCE:

BOWMAN AND BROOKE LLP
BY: KIM M. SCHMID, ESQUIRE
kim.schmid@msp.bowmanandbrooke.com
150 South Fifth Street, Suite 3000
Minneapolis, Minnesota 55402
612.339.8682
Counsel for Defendant Breg, Inc.

MITCHELL LANG & SMITH
BY: SCOTT J. MEYER, ESQUIRE
smeyer@mls-law.com
2000 One Main Place
101 SW Main
Portland, Oregon 97204
503.221.1011
Counsel for Defendant Pacific Medical

chondrolysis.
So I think everybody would agree, myself included, that a single injection of the same medication into the shoulder joint doesn't -- doesn't cause chondrolysis. So, you know, that -- we have a lot -- there's a lot of experience there.
Q. Okay. Would you agree then, Dr. Badylak, that the current state of medical science is such that we are unable, as of today, to quantify what the dose/response relationship would be regarding a continuous infusion of local anesthetic and the potential to develop chondrolysis in a human shoulder? Is that statement --
A. Yeah, that's -- that's better. So, I mean --
Q. All right.
A. I'm not trying to -- to parse -- I guess I am trying to parse words with you, because they become important, you know, and -- you know,



if -- if I can get you going a little further, I'll offer you a job in my lab. I mean, that's how I treat my -- you know, I go through this same sort of discussion when I'm writing papers with my graduate students because they -- they -- you know, words are important, as you know.
Q. All right. And sir, would you agree with me then that as of today in July of 2009, there is no epidemiological study that's been published regarding the development of chondrolysis and the potential association with continuous flow anesthetic; true?
A. No, not true. We -- matter of fact, I think we -- I can't remember the exact article. I think it was the -- may have been the McKinley article we reviewed in the last deposition.
MS. KALUR: McNickle.
THE WITNESS: I'm sorry, McNickle. The -- where the --



actually, the heading on the -- on the -- on that subsection of the manuscript said the epidemiology -- describing the epidemiology.
And there, you know -- there's a lot of ways to do epidemiologic studies, but when you do 14,000 patients like Williams did or you do 380-some patients like Busfield did, those are epidemiologic studies. There -- they can -- they can be retrospective. They can be prospective. You know, the -- the poster by Rick Matsen at the AAOS this past January, that was an epidemiologic study.
So I -- I -- I disagree with that statement. I think there -- there's plenty of epidemiologic evidence of what we're -- of the answer we're looking for here.
BY MS. SCHMID:



Q. All right. Dr. Badylak, in your opinion number 1, you talk about a, quote, "primary cause," close quote, correct?
A. Correct.
Q. I'm curious, sir, as a scientist, how do you make such a blanket statement about patients whose variables are unknown to you? And what I mean by that is, I assume, sir, that you have not, for your work in this case, looked at the individual medical records, the operative reports, the radiographs, or the MRI scans for each patient who has reported to develop chondrolysis. Correct?
A. Correct.
Q. How do you, then, sir, as a scientist lacking that type of information, then rule in or rule out potential factors that have been associated with chondrolysis?
MS. KALUR: Objection to form.

we have really no indication about what the intra-articular concentration is, regardless of whether we use .125, .25.

So with that lack of knowledge, I think Connie Chu's article should be taken in the context that there is a dose/response curve. We don't know what the absolute numbers are, but in her system, you're right, .125 didn't cause much of a problem. She started to see it at .25 and .5.

I think, again, it's one in vitro study. We take it for what it's worth. There's a dose/response effect on chondrocytes in that system, and I don't think we can get much more out of it. It's chondrotoxic at the -- the doses in that system.

Q. Right. And my point, Doctor, is, these levels that are being tested in these studies you're referring to, whether it be .5, .25 bupivacaine, 1 percent Lidocaine, 2 percent Lidocaine, whatever's being looked at, those levels



can't be directly translated to clinical application, because there's a lot of other variables that would need to be taken into account of which we just do not know the answers to, correct?

A. I agree with that statement, correct.

MS. KALUR: And just for the record, we have 55 minutes left with Dr. Badylak. So I don't know if we want to take a break so defense attorneys can discuss amongst themselves how they're going to do it.

MR. WOLFF: Just give me about two more minutes, and --

MS. KALUR: Okay.

MR. WOLFF: -- I'll finish up.

MS. KALUR: After that, perhaps we should discuss how you guys are going to use the remaining time.

MR. WOLFF: I could keep



going, Doctor. But just let me look through my notes, and if there's anything particular -- oh, one more -- let me do one more thing.

And I'm going to -- I'm going to put on the record that I'm not finished, but in the interest of time, I'm going to pass after this next item, because -- there were a lot more issues I wanted to go into, but let me do one more real quick while I have you, Doctor.

BY MR. WOLFF:

Q. The -- one of the articles that you cite on your reliance list is a presentation poster by Reuben Gobezie, M.D. Do you have that?

A. Somewhere.

MS. KALUR: It would have been marked as an exhibit in his file, Gobezie.

THE WITNESS: It's not in --



it's not in these, are they?

MS. KALUR: Yeah, I think it is.

BY MR. WOLFF:

Q. Let me just give you my copy to speed it up.

A. Okay. Okay. Good. Thanks.

Q. Doctor, if you take a look at that document, is that a presentation on a retrospective review of 687 patients that you have reviewed and are relying upon for your opinions in this case?

A. Yes.

Q. Okay. And is it correct that that retrospective review of 687 patients relates to patients who underwent arthroscopic shoulder surgery and received the intra-articular administration of local anesthetics via pain pump?

A. I don't recall it saying intra-articular. I remember reading this and thinking, okay, he treated a lot of patients with -- with Marcaine. But I --