# Appendix III, Tab 15

**Deposition of Suzanne Parisian, M.D., July 23, 2009**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DONNELL COX; ANITA McGINNESS and GERALD McGINNESS, husband and wife; DAVID DOOLITTLE and CAROLYN DOOLITTLE, husband and wife; JUAN A. HUERTA; and KATHERINE FORREST,
Plaintiffs,
v.
DJO, LLC, et al.,
Defendants.

Case No. CV 07-1310 AA

ELIZABETH D. CRONIN,
v.
I-FLOW CORPORATION, a Delaware Corporation,
Defendant.

Case No. 6:09-cv-146-AA

TAMARA L. FOLKMAN,
Plaintiff,
v.
DJO, LLC, et al.,
Defendants.

Case No. 6:09-cv-342-AA

DANNY E. ARVIDSON and ANNE E. ARVIDSON as husband and wife; and MARCY J. LANDOLFO,
Plaintiffs,
v.
DJO, LLC, et al.,
Defendants.

Case No. 08-CV-478-AA

DEPOSITION OF SUZANNE PARISIAN, M.D. - VOLUME 2

Portland, Oregon - Thursday, July 23, 2009

Page 284

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-CV-01297 MSK-MEH
TROY L. ALDERFER, )
Plaintiff, )
v. )
BREG, INC., et al. )
Defendants. )
__________________________________)

Civil Action No. 1:08-cv-00365-MSK-CBS
STACEY ANN HANSEN, )
Plaintiff, )
v. )
DJO, INCORPORATED, et al. )
Defendants. )
__________________________________)

Civil Action No. 1:08-cv-00962-MSK-CBS
SAMANTHA ARCHULETA and ROSEMARIE )
CARROLL, as parent and next friend, )
Plaintiffs, )
v. )
DJO, INCORPORATED, et al., )
Defendants. )
__________________________________)

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

CHRISTINA McCLELLAN, )
Plaintiff, ) Case No.
v. ) 07-CV-1309-AA
I-FLOW CORPORATION, a Delaware )
corporation; DJO, L.L.C., a Delaware )
corporation; DJO INCORPORATED, a )
Delaware corporation, and PACIFIC )
MEDICAL, INC., a California )
corporation, )
Defendants. )
__________________________________)

Page 285

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

GORDON ADDIS, )
Plaintiff, ) Case No.
v. ) 07-CV-1318-AA
McKINLEY MEDICAL, L.L.C., a Colorado )
corporation; MOOG, INC., a New York )
corporation; DJO INCORPORATED, a )
Delaware corporation; DJO, L.L.C., a )
Delaware corporation; PACIFIC MEDICAL,)
INC., a California corporation; )
CURLIN MEDICAL, L.L.C., a California )
corporation; and CURLIN MEDICAL, INC.,)
a Delaware Corporation, )
Defendants. )
__________________________________)

DEPOSITION - VOLUME 1

DEPONENT: SUZANNE PARISIAN, M.D.

DATE: Thursday, July 23, 2009

TIME: 8:10 a.m.

LOCATION: Williams Love O'Leary & Powers, PC
9755 SW Barnes Road, Suite 450
Portland, Oregon 97225-6681

REPORTER: Michele E. French, CSR-3091, RPR, RMR, CRR

Page 286

APPEARANCES:

On behalf of Plaintiffs Cox, Huerta, Forrest, Doolittle:
WILLIAMS LOVE O'LEARY & POWERS, P.C.
BY: LESLIE W. O'LEARY, ESQUIRE
9755 SW Barnes Road, Suite 450
Portland, Oregon 97225-6681
(503) 295-2924
loleary@wdolaw.com

On behalf of Defendant I-Flow:
WILLIAMS KASTNER & GIBBS, PLLC
BY: HEATHER J. VAN METER, ESQUIRE
888 SW Fifth Avenue, Suite 600
Portland, Oregon 97204
(503) 228-7967
hvanmeter@williamskastner.com

On behalf of Defendant Breg, Inc.:
BOWMAN AND BROOKE, LLP
BY: KIM M. SCHMID, ESQUIRE
150 South Fifth Street, Suite 3000
Minneapolis, Minnesota 55402
(612) 339-8682
kim.schmid@bowmanandbrooke.com

-- continued --

Page 287

APPEARANCES:

On behalf of Defendant Pacific Medical:
MITCHELL, LANG & SMITH
BY: SCOTT J. MEYER, ESQUIRE (via telephone)
2000 One Main Place
101 S.W. Main Street
Portland, Oregon 97204
(503) 221-1011
SMeyer@mls-law.com

On behalf of Defendants McKinley Medical, Curlin Medical and Moog:
HARRIS BEACH, PLLC
BY: PAMELA B. GOLDSMITH, ESQUIRE
100 Wall Street, 23rd Floor
New York, New York 10005
(212) 687-0100
pgoldsmith@harrisbeach.com

On behalf of Defendant DJO, LLC:
GODFREY & LAPUYADE, P.C.
BY: BRETT MARSHALL GODFREY, ESQUIRE
9557 South Kingston Court
Englewood, Colorado 80112
(303) 228-0700

Page 584

parentheses under your dotted line and put March of '93.
A Correct.
Q Okay. I'm just going to put "(March 1993, move)." Is that okay?
A Right, because this office is gone.
Q So we know what the dotted line is?
A Correct. This office is gone.
Q Okay. And then under Post-Market, you have listed the Office of Surveillance & Biometrics?
A Correct.
Q And in parentheses, I think what does that say there?
A This would be the arm that gets all the medical device reports.
Q Okay.
A And they do -- they have all the epidemiologists and the statisticians.
Q Okay.
A And so it's its own group but it's in the Office of Compliance.
Q Okay. And did you, during your time at the CDRH, did you do work in the Office of Surveillance & Biometrics?
A I was their medical support, so they would use me to look at adverse event reports and any issue they were involved in in terms of safety. Around 1993, they

Page 585

actually got their own M.D., so from '91 through 1993 I was their doctor.
Q Okay. And that was -- so within the Office of Health Affairs, you, the doctors, would have certain, like, offices that you would be assigned to?
A I'd have certain types of devices --
Q Okay. So you --
A -- and products.
Q It wasn't that you were assigned to the Office of Surveillance & Biometrics; you were assigned to particular devices and products?
A I was assigned wherever the Director and my boss put me in terms of the devices. So -- so I did anything that they needed a medical officer to help them on in terms of looking at adverse event reports.
Q Okay. But I just -- I guess I'm trying to understand, make sure I understand what you said previously. You said you were --
A I was sitting here.
Q -- the Office of Surveillance & Biometrics. You said you were their doctor.
A Right. Since there's so few doctors, you have to be able to go into any of these offices. So in the Office of Health Affairs, up until 1993, provided all the medical support for looking at adverse event reports.

Page 586

I had certain devices that are listed on my CV, that if there was an adverse event report or a nurse was concerned looking at the information, they would come and ask me to look at the information.
Q Okay. So as I understand it, when you said I was, meaning you, were the Office of Surveillance & Biometrics, you were their doctor, you were in the Office of Health Affairs among the doctors that would support that office; is that correct?
A Correct.
Q Okay.
A There's so few of us that they couldn't put a doctor in.
Q Okay. So it wasn't that you, personally, were the only person that the Office of Surveillance & Biometrics would go to ask for assistance of a medical doctor; you were in the group of Office of Health Affairs that would support them?
A In the group of three.
Q Okay.
A So there were three of us.
Q Right. And then you said you would consult with Office of Surveillance & Biometrics on specific devices?
A Device types of issues. It could be to work up -- it could be a case report, it could be an adverse event

Page 587

report, it could be something from a physician that came in. I would be the doctor they would go get, and I had -- most of the medical devices issues were involved with -- I had involvement with.
Q And you said that the -- what devices that you were -- was it you were in charge of certain devices or you were the M.D. assigned to certain devices? I'm just trying to get the right terminology.
A If you look at my CV, there's a list of all the devices that I was responsible for in OHA. And those -- if any adverse event report came in involving that or needing a health risk assessment, I was the doctor they would go get. So we'll show you that in the CV.
Q Okay. So Exhibit 1 is your -- I believe your current CV. And so where is the list that you're referring to?
A Okay. Office of Health Affairs, so primary support for the Office of Compliance, which is what we're talking about. These are the things that I would do for them, and these were the areas that I was specifically -- if there was any issue that came in from anywhere, then they would get me.
Q Okay. So --
A That would be --
Q -- on page 4 and onto page 5 of your CV, which is marked as Exhibit 1 to this deposition, your primary