**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1: 08-cv-00365-MSK-CBS

STACEY ANN HANSEN,

Plaintiff,

vs.

DJO, INCORPORATED, f/k/a DJ ORTHOPEDICS, INC.;
I-FLOW CORPORATION

Defendants.

---

**DEFENDANT DJO, INCORPORATED'S JOINDER TO DEFENDANT I-FLOW'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS RULE 702 MOTION TO EXCLUDE THE PROPOSED EXPERT OPINIONS OF SUZANNE PARISIAN AND CHARLES BECK; AND DJO'S ADDITIONAL POINTS AND AUTHORITIES IN SUPPORT THEREOF**

---

## I. INTRODUCTION

Defendant DJO, Incorporated (DJO), by and through counsel, Morris Polich & Purdy LLP and Godfrey & Lapuyade, P.C., hereby joins in defendant I-Flow's Supplemental Brief in support of its Rule 702 Motion to exclude the proposed expert opinions of Suzanne Parisian and Charles Beck. Said supporting points and authorities are fully incorporated hereto by this reference. DJO submits the following supplemental points and authorities to further address Suzanne Parisian's specific and erroneous opinions regarding DJO's role in this litigation.

## II. PARISIAN'S OPINIONS THAT DJO, A PAIN PUMP DISTRIBUTOR, HAD THE SAME REGULATORY DUTIES AS THE MANUFACTURER OF THE PAIN PUMPS ARE ERRONEOUS, UNRELIABLE AND LACK FOUNDATION

Parisian's Opinion #s 1 through 10, as to DJO, are fundamentally flawed because they are erroneously premised on Parisian's assertion that DJO had the same regulatory responsibilities as

the manufacturer of the pain pumps. Parisian opines that "DJO…disregarded [its] duties and obligations to protect public safety and ensure compliance with regulatory safeguards of the Food and Drug and Cosmetic Act. ("the Act")…because [it] "failed to adequately design, test and obtain appropriate premarketing clearance from FDA to begin marketing its infusion pain pump legally for a new and unapproved indication…" *See* Exhibit 1, Parisian Report at 13, Opinion # 1. The alleged bases for this flawed opinion are presumably found on page 104 of Parisian's report wherein she states that:

> I-Flow from 1999 through December 2003 and then McKinley/Curlin beginning in 2004 supplied DJO with finished infusion pumps that were relabeled with the brand name 'DonJoy.' Therefore, DonJoy is viewed by FDA as a manufacturer for ensuring adequacy of its label and warnings to health care providers and sales representatives. According to FDA, a manufacturer includes but is not limited to those who perform the functions of 'relabeling.'

*See* Ex.1, Parisian Report at 104.

Thus, Parisian admits that DJO did not manufacture finished pain pumps but rather received said finished goods from I-Flow and McKinley/Curlin. Parisian improperly speculates as to the state of mind of persons purchasing DJO distributed pain pumps by stating that "Anyone buying a DonJoy pain pump would view DJO (DonJoy) as responsible for having ensured safety, efficacy, and adequacy of label and promotions." *See* Ex. 1, Parisian Report at 103-104. Parisian is not qualified to speculate about how consumers of pain pumps or the FDA view DJO. Such testimony is pure speculation and conjecture and Parisian has been reprimanded by courts, on more than one occasion, for rendering opinions on the state of mind of others. In *In re Fosamax Litigiation*, the Southern District of New York concluded that:

> To the extent Merck's motion seeks to preclude Dr. Parisian from testifying as to the knowledge, motivations, intent, state of mind, or purposes of Merck, its employees, the FDA, or FDA officials, it

> is GRANTED. Dr. Parisian conceded at the hearing that her regulatory expertise does not give her the ability to read minds. Nevertheless, her report is replete with such conjecture. This is not a proper subject for expert or even lay testimony.

*See In re Fosamax Prods. Liab. Litig.*, 645 F. Supp.2d 164, 192 (S.D.N.Y. 2009).

Similarly here, Parisian should not be allowed to testify regarding how a consumer or the FDA may have "viewed" DJO as such testimony is speculative and utterly unreliable under Rule 702 and *Daubert*. Furthermore, by Parisian's own admission, she cannot "speak for the FDA." *See* Exhibit 3, Parisian's May 15, 2009 Deposition, at 320:21-23.

Parisian's opinions further lack foundation because DJO is not, and was not, a pain pump manufacturer. Under the Code of Federal Regulations a medical device "manufacturer" is defined as "any person who designs, manufacturers, fabricates, assembles, or processes a finished device. Manufacturer includes but is not limited to those who perform the functions of contract sterilization, installation, relabeling, remanufacturing, repacking, or specification development, and initial distributors of foreign entities performing these functions." *See* 21 C.F.R. 820.3(o). A device "distributor" is defined as "a person who furthers the distribution from the original place of manufacture to the person who makes delivery or sale to the ultimate user, i.e., the final or multiple distributor, but who does not repackage or otherwise change the container, wrapper, or labeling of the device or device package." *See* 21 C.F.R. 821.3(h).

Here, it is an undisputed fact that DJO was a distributor and ***not a manufacturer*** of the pain pumps in these cases. DJO did not manufacture pain pumps nor did it direct the manufacturing efforts of others. Parisian herself acknowledges that DJO was not the manufacturer of the pain pumps.

> Q: Now, the pumps that we're talking about in this case are manufactured by whom?

> A: In terms of this case, we're talking about I-Flow, we're talking about McKinley, and we're talking about –well, Stryker is not here at the table, but in terms of the report, we would have Stryker. We would have DJO, which is your company, **which distributes pumps manufactured at one time by I-Flow or McKinley**.
>
> Q: As you anticipated my question. **But you recognize, do you not, that the actual manufacturer of the pump itself is not performed by DJO**?
>
> A: **Yes, sir**.

*See* Exhibit 2, Parisian's July 23, 2009 Deposition, at 346:3-14, emphasis added.

Since DJO was not the manufacturer, it did not seek or obtain FDA clearance and/or approval for the manufacture of the pain pumps. DJO did not label the pumps or re-label the pumps or take any other action which would in any way render DJO a manufacturer pursuant to the FDA's medical device regulatory scheme. DJO, as a distributor, merely acted as the conduit of the devices and information, manufactured and developed by others, to medical facilities and practitioners. DJO was not in control of the labeling, instructions for use or related warnings for the pain pumps. The 510(k) clearance letters issued by the FDA for the pain pumps were issued to the manufacturers, <u>not</u> DJO. Parisian herself admits that DJO did not file any Declaration of Conformity in connection with a 510(k) application for FDA clearance of pain pumps. *See* Exhibit 2, Parisian's July 23, 2009 Deposition, at 366:18 – 367:6. There is also no evidence that DJO altered the manufacturer's packaging, labeling, instructions for use or warnings prior to distributing the pain pumps to medical facilities and practitioners. Parisian herself admits that the labeling for the pain pumps distributed by DJO was made by either I-Flow or McKinley.

> …in terms of DonJoy, there are two sets of manufacturers here. There's two sets of pumps. **We've got I-Flow pumps. Later, after---in 2004, we got a McKinley pump. So we have different pumps, so we have different generations of labeling, each made by those manufacturers**. And so there is information not necessarily what to put in the pump.

*See* Exhibit 2, Parisian's July 23, 2009 Deposition, at 379:23 – 380:4, emphasis added.

Parisian further admits that she is not aware of any evidence whatsoever that would suggest that DJO had any input into the design of the pain pumps. *See* Exhibit 2, Parisian's July 23, 2009 Deposition, at 346:24 – 347:19. Parisian nevertheless seeks to charge DJO with the same responsibilities as the pain pump manufacturers because DJO's name appeared on the labels of the pain pumps and, on that bases alone, Parisian claims that DJO is a "relabeler." *See* Exhibit 1, Parisian Report at 103. She speculates that "DJO ***could also be considered*** a manufacturer under certain categories of the FDA. They are a distributer—but they also have their name on the device and so they have a role as a manufacturer." *See* Exhibit 2, Parisian's July 23, 2009 Deposition, at 346:18-26, emphasis added.

However, the FDA clearly defines a "Relabeler" as one who "changes the content of the labeling from that supplied from the original manufacturer for distribution under the establishment's own name. ***A relabeler does not include establishments that do not change the original labeling but merely add their own name***." *See* FDA website at www.fda.gov under Medical Devices, Who Must Register, List and Pay the Fee. DJO did not create the labeling for the pain pumps or gain regulatory approval of the same. DJO did not "re-label" the pumps or alter the manufacturer's labeling in any way, and DJO did not participate in the 510(k) process for the pumps. The fact that DJO's name appears on the device does not make it a manufacturer and Parisian cites to no authority to the contrary.

Likely realizing the weakness of her "re-labeler" argument, Parisian then tries to support her argument that DJO had the same responsibilities as a manufacturer in this case by arguing that DJO is "registered with the FDA as a United States Medical Device Establishment and it does have its own cleared 510(k)." *See* Exhibit 1, Parisian Report at 104, ¶ 192. Parisian argues

that because DJO is a registered medical device establishment and holder of cleared 510(k)s ***for medical devices other than the one at issue in this case***, DJO, in this case, "is required to be knowledgeable about and have standard operating procedures (SOP) pertaining to 510(k)s, Quality Systems (21 C.F.R. 820), Medical Device Reporting (21 C.F.R. 803), post market surveillance, registration and listing, updating labeling (21 C.F.R. 801) and conducting recalls." *Id.*

The fact that DJO may be the manufacturer of other products which are not at issue in this case is entirely irrelevant and has no bearing on whether DJO is a manufacturer in the context of the events at issue in this case. Here, DJO, did not manufacture, test, label, re-label or obtain regulatory approval for the pain pumps. Simply stated, DJO was not the manufacturer of the pain pumps. How, then, can Parisian charge DJO with the responsibility for, among other things, conducting post-market surveillance, registering and listing, updating the labeling and conducting recalls of the pain pumps? Simply stated, she cannot. Furthermore, there is no evidence that the FDA has charged DJO with any of the responsibilities of a manufacturer in this case.

Because DJO is not the manufacturer of the pain pumps, all of Parisian's opinions are utterly lacking in foundation and should therefore be excluded. Since DJO did not create the label for the pain pumps, Parisian's Opinion #2 that DJO "rendered other drug manufacturer's FDA-approved products misbranded…" and her Opinion #7 that DJO "failed to voluntarily and adequately warn" completely lack foundation because they are premised on the erroneous notion that DJO had the same regulatory duties as the manufacturers of the pain pumps. *See* Exhibit 1, Parisian Report at 13 and 14. Since DJO was not the manufacturer of the pain pumps, Parisian's Opinion #4 that "DJO…promoted orthopedic surgical pumps to physicians for investigational

use in patients without first obtaining an approved IDE (21 C.F.R. 812) or IND (21 C.F.R. 312)" is also erroneous and lacks foundation. *Id.* Since DJO was not the manufacturer of the pain pumps, Parisian's Opinion #5 that "DJO…disregarded information in the medical and scientific literature regarding negative effects of anesthetics on cartilage…" is erroneous and lacks foundation in that it improperly imposes a duty on a distributor to "monitor literature" when no such duty exists in the FDA regulatory scheme. *Id.*

Parisian's Opinion #6 that "…DJO... engaged in practices designed to mislead the FDA, physicians, sales representatives in order to continue selling adulterated and misbranded pain pump sets…" also lacks foundation. *See* Exhibit 1, Parisian Report at 13. First, there is no evidence that DJO had any communications with the FDA regarding the pain pumps much less that FDA was "misled" by any statement or action on the part of DJO. Second, Parisian admitted during her deposition that she could not name a single doctor who ever heard any recommendation from DJO to use pain pumps in the shoulder joint. *See* Exhibit 2, Parisian's July 23, 2009 Deposition, at 452:24 to 453:4.

Further, with regard to Parisian's Opinions #s 8 and 10 by which she seeks to impose post-market surveillance duties on DJO to "monitor complaints" and "perform epidemiological studies," she fails to cite to any regulation by which such duty is imposed on a device distributor. *See* Parisian Report at 14. As the distributor of pain pumps (not the manufacturer) DJO had no post-market surveillance obligations regarding the pain pump at issue, other than to report to the manufacturer any adverse events of which DJO was expressly made aware. Parisian cites to no evidence to show that DJO was expressly made aware of Plaintiff's claim and failed to "monitor it." In fact, Parisian testified that she had no specific knowledge about plaintiff Stacey Hansen. *See* Exhibit 2, Parisian's July 23, 2009 Deposition, at 355:17 - 22. Parisian's opinions which

charge DJO with the duties of a manufacturer are erroneous, unreliable, lack foundation and should therefore be excluded at trial.

## III. CONCLUSION

For all of the foregoing reasons as well as those reasons set forth in I-Flow's supplemental brief in support of their motion to exclude the proposed opinions of Parisian and Beck, which said reasons are fully joined by DJO and incorporated herein by this reference, DJO respectfully requests that the Court issue an Order excluding the opinions of both Drs. Parisian and Beck.

Respectfully submitted this 7th day of July , 2010.

s/ James A. Johnson
James A. Johnson
*Attorneys for DJO, Incorporated, f/k/a DJ Orthopedics, Inc.*
GODFREY & LAPUYADE, P.C.
9557 S. Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax: (303) 228-0701

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

D. Robert Jones
D. Robert Jones, P.C.
219 West Colorado Avenue, Suite 210
Colorado Springs, Colorado 80903
jones@drjpc.com
*Counsel for Plaintiff*

Thomas B. Powers
Leslie W. O'Leary
Michael L. Williams
Heather A. Brann
Williams Love O'Leary & Powers, P.C.
9755 SW Barnes Road, Suite 450
Portland, Oregon 97225-6681
mwilliams@wdolaw.com
loleary@wdolaw.com
tpowers@wdolaw.com
hbrann@wdolaw.com
*Counsel for Plaintiff*

Laura B. Kalur
Kalur Law Office
9755 SW Barnes Road, Suite 450
Portland, Oregon 97225-6681
lbkalur@kalurlaw.com
*Co-Counsel for Plaintiff*

Ernest Franklin Woodson
Beasley Allen Crow Methvin Portis & Miles
P. O. Box 4160
Montgomery, Alabama 36103-4160
frank.woodson@beasleyallen.com
*Co-Counsel for Plaintiff*

Jeffrey R. Pilkington
Jordan L. Lipp
Davis Graham & Stubbs, LLP-Denver
1550 17th Street, Suite 500
Denver, Colorado 80202
jeff.pilkington@dgslaw.com
jordan.lipp@dgslaw.com
*Counsel for I-Flow Corporation*

Erin Graham
Segal McCambridge Singer & Mahoney Ltd.
Sears Tower
233 S. Wacker Drive, Suite 5500
Chicago, IL 60606
egraham@smsm.com
*Counsel for –Flow Corporation*

Roger G. Perkins
Sara T. Miller
Morris Polich & Purdy LLP
501 West Broadway, Suite 500
San Diego, CA 92101-3544
*Co-Counsel for DJO, Inc.*

s/ James A. Johnson
James A. Johnson
*Attorneys for DJO, Incorporated, f/k/a*
*DJ Orthopedics, Inc.*
GODFREY & LAPUYADE, P.C.
9557 S. Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax: (303) 228-0701