# EXHIBIT 51

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

CHRISTINA McCLELLAN, )
)
Plaintiff, )
v. ) Case No. 07-CV-1309-AA
)
I-FLOW CORPORATION, et al. )
)
Defendants. )
________________________________)
)
GORDON J. ADDIS, )
) Case No. 07-CV-1318-AA
Plaintiff, )
v. )
) Deposition of:
McKINLEY MEDICAL, LLC, et al.)
) CHARLES L. BECK, JR., M.D.
Defendants. ) Volume 2
________________________________)

August 31, 2009 * 8:07 a.m.

Location: Parsons Behle & Latimer
One Utah Center, 201 South Main Street, Suite 1800
Salt Lake City, Utah

Reporter: Susette M. Snider, CSR, RPR, CRR
Notary Public in and for the State of Utah

statistical sense?
MR. WIHTOL: Object to the form of the question. Asked and answered.
THE WITNESS: Not in a strictly statistical sense.
Q. (By Mr. Campillo) Now, you used the qualifier "strong" in your conclusion, right?
A. Yes, sir.
Q. What did -- how did you use -- what was your -- I don't know what a word is.
Were you using "strong" in a statistical epidemiological sense, or was it more of a gut level sense or something else? In other words, how did -- why did you use that word "strong"? In what sense did you use it?
A. Well, we believed that the data we had supported the statement that there was a strong association from any way that you wanted to look at it.
Q. Okay. But you did not mean it in a statistical epidemiological sense?
A. Not in the strictest definition because we did not perform -- we did not have the capability of performing epidemiological statistical analysis.
Q. Why did you not have the capability of

doing epidemiological analysis?

A. We did not have anybody on staff. I did not consult with an epidemiologist anywhere else. I did not want to delay this paper being published any longer because it had been quite some time that we had been working on this and trying to get this information out because we were fearful that there was a potential of -- potential risk to a number of patients out there in the community.

So our goal wasn't to perform a Level 2 paper, which would have been the strongest paper we could have written. Our goal was just to get this information out there.

Q. Okay. Have you -- well, never mind.

Did you make any calculations at all -- strike that.

Still looking at the conclusion, Dr. Beck, there's a sentence that says,

It is likely that other unrecognized factors are also involved.

That was your view at the time the final version of the manuscript was written, correct?

A. Yes.

Q. Is that still your view today?

A. I believe there are a few

appreciate it.

Q. No, just in general, you listed the articles. You discussed them last time. I think there's 34 articles in Appendix 2 that are the ones that you reviewed and relied in formulating your opinions in the McClellan and Addis cases, right?

A. Among other things.

Q. Are any of the articles on Exhibit -- Appendix 2 to Exhibit 12, as they relate to the issue of causation, higher than a Level 4 study?

A. I can't tell you which ones because I don't have a list in front of me.

Q. Okay.

A. But as I recall, there were several Level 2 and Level 3 articles in there.

Q. Okay. Let me dig it out.

A. I don't believe there are any Level 1 articles for this because that's considered unethical in this situation.

Q. Let me show you Exhibit 12 and refer to Appendix 2. I'm looking in the wrong place.

Okay. Here's Appendix 2 to Exhibit No. 12 which was discussed at the first session of your deposition. And my question is to direct you, as you're looking for items, any articles that are

REPORTER'S CERTIFICATE

STATE OF UTAH )
) ss.
COUNTY OF SALT LAKE )

I, Susette M. Snider, Registered Professional Reporter, Certified Realtime Reporter and Notary Public in and for the State of Utah, do hereby certify:

That prior to being examined, the witness, Charles Beck, M.D., was by me duly sworn to tell the truth, the whole truth, and nothing but the truth;

That said deposition was taken down by me in stenotype on August 31, 2009, at the place therein named, and was thereafter transcribed and that a true and correct transcription of said testimony is set forth in the preceding pages;

I further certify that, in accordance with Rule 30(e), a request having been made to review the transcript, a reading copy was sent to Jeffrey B. Wihtol, Attorney at Law, for the witness to read and sign and then return to me for filing with Ralph A. Campillo, Attorney at Law.

I further certify that I am not kin or otherwise associated with any of the parties to said cause of action and that I am not interested in the outcome thereof.

WITNESS MY HAND AND OFFICIAL SEAL this 11th day of September, 2009.

Susette M. Snider, RPR, CRR
Notary Public
Residing in Salt Lake County.