# EXHIBIT 58

THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION
Case No.: 4:08-cv-04190-LLP

MARCUS J. SUHN,

vs.

BREG, INC.

-----------------------------------------------
Case No.: 4:08-cv-04193-KES
KELLY J. KOCH,
vs.
BREG, INC.
-----------------------------------------------
CIRCUIT COURT FOR
MONTGOMERY COUNTY, MARYLAND
Case No.: 312486-V

FREDERICK SCACCIA and JEANNE SCACCIA,
vs.
SGARLATO MED., et al.
-----------------------------------------------
IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
Case No. 1:09CV091

RACHEL KRUMPELBECK,

vs.

BREG, INC., ORTHOFIX INTERNATIONAL NV,
ADVANCED TECHNOLOGY OF KENTUCKY,
d/b/a ADVANCED TECHNOLOGIES, INC.,
DOE 1 and ABC CORPORATION,
-----------------------------------------------

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, COLUMBUS
Case No. 2:09-cv-00146-JLG-NMK

BRITTANY HAMILTON, et al.,

vs.

BREG, INC., et al.,

---------------------------------------------

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
Case No. 2:09-cv-01029-GLF-MRA

KAID C. MUSGRAVE, et al.,

vs.

BREG, INC., et al.

---------------------------------------------

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
Case No. 2:08-cv-01252-HRH

ANDREW GILMORE, et al.,

vs.

DJO INCORPORATED, et al.

---------------------------------------------

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
Case No. 1:09-cv-03908

AMANDA SMITH, et al.,

vs.

I-FLOW CORPORATION, et al.

---------------------------------------------

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION
Case No. 1:09-cv-01380-SEB-TAB

JOSEPH D. ESSEX, et al.,

vs.

I-FLOW CORPORATION, et al.

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
Case No. 2:09-cv-00531-KJD-RJJ

REBECCA GRAHAM, et al.,

vs.

I-FLOW CORPORATION, et al.

---

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
Case No. 5:09-cv-01991-JRA

DEBORAH L. MAYLE, et al.,

vs.

STRYKER CORPORATION, et al.

---

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
Case No. 2:09-cv-01197-AJS

DONNA J. LAWTON, et al.,

vs.

ADVANCED INFUSION, INC., et al.

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
COLUMBUS
Case No. 2:10-cv-21

CHRISTINA SCHUMACHER,

vs.

BREG, INC.

-----------------------------------------------

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
Case No. 6:09-CV-06241-AA

MATTHEW SLAVENSKI,

vs.

STRYKER CORPORATION, et al.

-----------------------------------------------

VOLUME 2
ORAL DEPOSITION OF
SANDER GREENLAND, M.A., M.S., Dr.P.H., C.Stat
WEDNESDAY, FEBRUARY 24, 2010
SANTA MONICA, CALIFORNIA

REPORTED BY:
JEANINE CURCIONE
CSR NO. 10223, RPR

hypothetical, if there were some huge number of cases missing from the non-pain pump group -- it would have to be a very large number, but if there were, then they would -- that would be balancing. If there were this huge number of chondrolysis cases, we could calculate out how many would be missing. We'd have to fill in before it would make the association go away, and it's far larger than any factor that's been raised can explain.

Q. Doctor, would you turn to page 9 of Exhibit 30, Comment 37.

A. Yes.

Q. Do you see the -- I'll just read that into the record: "The authors have taken an unusual approach to try to validate the completeness of the legal review; however, this legal proof doesn't convincingly improve the quality of their data. There is still no assurance that all of the cases were included, only that all the records were obtained. This sample still represents a retrospective case review with all of the potential for bias that characterizes this study design."

Do you agree with that last sentence?

A. Well, I would call it a retrospective cohort study, again, with all the potential for bias that

characterizes the study design. That phrase I would agree with, and we have to then discuss those potential biases. And they say -- I notice too that we acknowledge this limitation in the discussion. In my terminology I call it a retrospective cohort study. Okay? So I disagree with that part, but that's a matter of just arguing about terminology.

Then the more substantive part of the sentence is, "With all the potential for bias that characterizes the study design." I agree with that, and then we have to discuss the biases. And some, like the confounding, hit up against the brick wall of the zero. Others, like the follow-up issue, is not as easily dismissed. Then they say, "We have acknowledged this limitation in the discussion."

Q. And some, like the potential for litigation bias, have not been addressed. Would you agree with that?

A. Well, they haven't been addressed here. I haven't looked at these materials. Then they haven't.

Q. Now I'm moving back now to your supplemental report. You used the term on page 6 under "Conclusion," second paragraph at the bottom, you say, "Thus, with high certainty I would infer that the intra-articular placement of the pain pump catheter was

EXAMINATION

BY MR. FERN:

Q. Good afternoon. We meet again. My name is Frederick Fern. I represent McKinley and Moog in this case, and we last met last fall.

A couple questions. You just mentioned the Rapley article. The Rapley article is not cited to nor do you speak about it in your supplemental report.

A. I don't think I had it then.

Q. The first time you mentioned the Rapley article, I believe, was when you testified at the Beale trial last month in Portland; correct?

A. I don't recall, but I suppose.

Q. Do you have a recollection of what the Rapley article was?

A. Recollection? Well, yes.

Q. Do you have a copy of it in front of you?

MR. WILLIAMS: It was marked this morning.

THE WITNESS: There it is. 17. Yes.

BY MR. CRANE:

Q. Now, you cite to the Rapley article to support your proposition of a high association between exposure to high-volume pain pumps and chondrolysis; correct?

A. That's okay. Yes.

Q. How many patients in the Rapley article were diagnosed with chondrolysis?
A. Let's see the exact number.
Three were diagnosed with chondrolysis.
Q. And so there were 3 out of 15 patients who were exposed to high-volume pain pumps?
A. Yes.
Q. And if you look -- and I see you have the article in front of you. What number is it, sir?
A. 17.
Q. So you have Exhibit 17 before you. If you would turn, sir, to page 1370 of the article.
A. Okay. Yes.
Q. And if you look down on the left-hand column, very last paragraph, where he's talking about the patients who were diagnosed with chondrolysis, that last paragraph reads, "The first of these patients underwent an arthroscopic posterior Bankart repair with a biodegradable suture anchor."
Do you see that, Doctor?
A. Yes.
Q. So that was one patient who was exposed to both a high-volume pain pump and a biodegradable suture anchor who developed chondrolysis?
A. Yes.

A. Right.

So maybe it's hard for you to see, but for me it's just that simple. If you put that data into the program, it would stop and say -- give some kind of message saying -- it varies by program -- singularity, no cases, whatever -- it would stop dead. It would be like you -- I don't know. I think that's clear enough.

Q. Doctor, you had previously testified, and I just wanted to make sure that you are still of this opinion, that you are still aware of only one published comparative investigation of the association between intra-articular pumps and chondrolysis?

A. Wait. I'm aware of two now.

Q. Which are?

A. Rapley is No. 2.

Q. So you consider Rapley to be a comparative investigation of association?

A. Yes.

Q. Doctor, you told us last time regarding your initial report. But regarding your supplemental report, have you shared the opinions set forth in your supplemental report with any of your peers or colleagues at the UCLA School of Public Health?

A. No.

Q. Have you shared the opinions set forth in

REPORTER'S CERTIFICATE

I, JEANINE CURCIONE, C.S.R. NO. 10223, RPR, in and for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify the truth, the whole truth and nothing but the truth.

That said deposition was taken down by me in shorthand at the time and place therein named, and thereafter reduced to typewriting under my direction, and the same is a true, correct and complete transcript of said proceedings.

I further certify that I am not interested in the event of the action.

Witness my hand this _______ day of

__________________, 2010.

_________________________

Certified Shorthand
Reporter for the
State of California