# EXHIBIT 59

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

DANIKA GROSSNICKLE and TIMOTHY GROSSNICKLE, husband and wife; ROBIN LABAW; CHRISTINE O'RILEY and MICHAEL O'RILEY, husband and wife; CHARLES SHWALLON and TRISHA SHWALLON, husband and wife; TROY STANPHILL and MARGARET STANPHILL, husband and wife; JUANITA BERRY and JEFFREY BERRY, husband and wife; and SCOTT ROONEY and MISTI ROONEY, husband and wife,

Plaintiffs,

vs. NO. 0703-02834

(Caption continued on next page.)

TRANSCRIPT OF PROCEEDINGS

Volume 5-A

(Pages 1016 to 1118)

BEFORE THE HONORABLE MICHAEL H. MARCUS

Tuesday, March 3, 2009

STRYKER CORPORATION, a Michigan corporation;
STRYKER SALES CORPORATION, a Michigan corporation;
I-FLOW CORPORATION, a Delaware corporation;
PROVIDENCE HEALTH SYSTEM-OREGON, an Oregon nonprofit corporation; TUALITY HEALTHCARE, an Oregon nonprofit corporation, doing business as TUALITY COMMUNITY HOSPITAL; and A. BROOKE BENZ, M.D., individual and doing business as BENZ BONE & JOINT CLINIC,

Defendants.

INDEX

Page

Settlement Discussion........................1022

CHARLES LEONARD BECK, JR., M.D.

Direct Examination by Mr. Barton.............1082

* * * * * NO EXHIBITS RECEIVED * * * * *

**Q All right.**
A I don't remember the exact date, but it was either in -- around that time to, you know, mid to late December or early January --
**Q Of '05?**
A December 2004, January 2005.
**Q What was your discussion with Mr. Kelley?**
A I asked him if he had had any knowledge of pain pump catheters causing problems.
**Q What did he say?**
A He said no.
**Q Was that important to --**
A I said -- well, and I also -- excuse me.
I also said that I believe that there's an association with this same condition because I can't find any other reason for it. And I asked him, you know, if he could convey that to Stryker, maybe it would be appropriate to get a warning out and start asking around to find out if some of the other cases that were now being reported in meetings had been associated with pain pump use. And that was, again, sometime in either -- at the latest, it would have been the first part of February 2005. But I believe it was probably the end of December of 2004, I

actually said that.
**Q Okay. So that -- looking at our calendar up here, that would be right about in here in December '04 and early '05; is that right?**
A That's correct.
**Q All right. And did you have any further contact or response from the Stryker people concerning your complaints and suggestions?**
A I -- well, I didn't get a whole lot of response other than no, I haven't heard anything. And I said, would you please contact people and let me know. And I didn't really hear anything back.
I began to talk with my colleagues and peers saying: Have you guys heard of this? And one of them was Dr. Paulos, who, about that time, had a patient come into his office who had the condition.
**Q "The condition" meaning --**
A The chondrolysis. He thought when he first saw his patient that -- and he has told me this several times --
MR CAMPILLO: Objection. Hearsay. No opportunity to cross-examine.
MR. BARTON: Not offered for its truth.

STATE OF OREGON

ss.

County of Multnomah

I, Charlotte A. Powers, Official Court Reporter Pro Tempore of the Circuit Court of the State of Oregon, Fourth Judicial District, certify that I reported in stenotype the foregoing proceedings in the above-entitled case.

I further certify that my stenotype notes were reduced to transcript form by Computer-Aided Transcription under my direction.

And I further certify that pages 1016 through 1117, Volumes 5-A, contain a full, true, and accurate record of my stenotype notes.

Dated this 3rd day of March, 2009, at Portland, Oregon.

-----------------------------------

Charlotte A. Powers, RMR, CSR, CRR, FCRR

Official Court Reporter